Stellwagon, Appellant, v. Pyle.

18

Argued April 16, 1957. Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

*Malcolm B. Petrikin*, with him *Harold K. Wood, John W. Wellman* and *Chadwick, Curran, Petrikin & Smithers*, for appellants.

*J. H. Ward Hinkson*, with him *William A. Burns, William Charles Hogg, Jr.* and *Vincent P. McDevitt*, for appellees.

Opinion by Mr. Justice Chidsey, June 28, 1957:

Plaintiffs in this action in equity sought to enjoin the individual defendants from breaching the terms of a written agreement whereby defendants engaged, inter alia, not to convey certain real estate to the Philadelphia Electric Company which was permitted to intervene as a party defendant. Both the individual defendants and the intervening defendant filed preliminary objections to the complaint. The court sustained the preliminary objections and entered judgment for the defendants. This appeal by the plaintiffs followed.

The material averments of the complaint as set forth in the opinion of the court below are as follows: "Plaintiffs Stellwagon and Charch are the owners, respectively, of premises situated in the Township of

Pennsbury, Chester County, Pa. Plaintiffs, Max R. Karrer and Nedra E. Karrer, husband and wife, are the owners of premises situated in the Township of Birmingham, Delaware County, Pa. Defendants are joint owners of premises situated in the Township of Birmingham, Delaware County, Pa. The premises of the plaintiffs are situated adjacent to or in the immediate vicinity of the premises of the defendants.

"The Philadelphia Electric Company proposes to erect a 220,000 volt transmission line from its Bradford substation in Chester County over a determined route to a power plant of the Company known as Eddystone Power Plant in Delaware County, Pa., 'said route having been determined by the said Philadelphia Electric Company'.

"For the location of this transmission line, the Company notified plaintiffs, defendants and others that it desired to obtain rights of way or deeds in fee simple over and across their respective properties for its corporate use, including the erection of towers, poles, wires, cross arms, anchor guys and other necessary appurtenances for the transmission or distribution of electricity over the transmission line.

"The Company instituted proceedings before the Public Utility Commission of the Commonwealth to take the land of plaintiffs for use in the erection of the transmission line. Pursuant to these proceedings, and after public hearings, the Commission has issued certificates of convenience as to the properties of plaintiffs Stellwagon and Charch. An appeal to the Superior Court of the Commonwealth has been taken and is now pending by plaintiff Charch.[1] No order has been

---

[1] An examination of the briefs filed in the Superior Court discloses that Charch does not question the necessity for the acquisition by the electric company of a portion of his property for construction of its proposed transmission line but disputes the com-

made by the Commission respecting the property of plaintiffs Max R. Karrer and Nedra E. Karrer.[2]

"In these proceedings before the Commission, the route described and set forth by the Company contemplated and was dependent upon the acquisition of rights of way over and across defendants' property. The Company has instituted no proceedings before the Commission respecting defendants' property, and no such proceedings may legally be instituted, as defendants' property comes within the exceptions to the provisions of the Act of May 21, 1921, **P. L. 1057.**[3]

"On April 9, 1953, defendants entered into a written agreement with other nearby property owners, wherein they agreed that they '. . . will not within a period of ten years from April 1, 1953, execute or deliver any deed, agreement, release or other written instrument to the Philadelphia Electric Company whereby the said company, their successors or assigns, shall have the privilege or legal right to erect or cross said property with the construction, extension, or continuance of a high voltage power line requiring the use of towers and a right-of-way in excess of twenty feet in width, until and unless all of the other parties to this Agreement shall mutually agree so to do'.

"At the same time, plaintiffs Stellwagon and Charch executed exact copies of said agreement with the knowl-

---

pany's right to acquire it by condemnation because of the exception in the Act of May 21, 1921, P. L. 1057 which provides: ". . . a dwelling-house or the reasonable curtilage, not to be less than three hundred feet, appurtenant thereto, shall not be appropriated . . .", the question being whether an intervening highway and railroad limit the curtilage under the language of the exception.

[2] As hereinafter stated in our opinion, it appears that a certificate of public convenience has since been issued as to the property of the Karrers.

[3] The particular and only pertinent exception being the one quoted in Footnote 1, supra.

edge that defendants had executed exact copies of said agreement, each containing the exact same terms and conditions and entered into for the same purposes. Plaintiffs Max R. Karrer and Nedra E. Karrer purchased their premises from William H. Porter and Elizabeth S. Porter with knowledge of and in reliance upon an agreement executed by the Porters, which was an exact copy of the agreement executed by the other plaintiffs and the defendants. Plaintiffs, relying upon said written agreement, and with full knowledge that defendants had executed the agreement, resisted and protested the proceedings before the Public Utility Commission.

"Plaintiffs are advised, believe and therefore aver that the route of said transmission line will not traverse and cross their respective properties unless the line also traverses defendants' property; that defendants, in violation of said agreement of April 9, 1953, are about to enter into an agreement with the Company for the sale of a portion of their premises for the transmission line; that the Company, with knowledge of said agreement of April 9, 1953, is about to enter into an agreement with defendants for the purchase of a portion of their premises to be used for the erection of the transmission line.

"Finally, plaintiffs aver that, 'If Defendants, in violation of said Agreement of April 9, 1953, are permitted to convey a portion of said premises to the Philadelphia Electric Company, Plaintiffs will be deprived of a part of their said property, will be subjected to the installation of an unsightly and highly dangerous high voltage transmission line system, irreparably damaging the remainder of their said property and permanently interfering with the enjoyment and use of the same which, except for the breach of the above mentioned Agreement by the Defendants, would not be legally possible'.".

22

The court below upheld the preliminary objection filed by the intervening defendant that the agreement between plaintiffs and defendants contemplates, and did in fact constitute, a serious interference with the discharge by the intervenor of its duty to furnish an adequate supply of electricity to consumers in Delaware County; and hence the court should not exercise its extraordinary equity powers to enforce the performance of the agreement.

It is apparent that the agreement in question was designed to make it impossible for the defendant company to carry out its program of constructing a high voltage transmission line which the Public Utility Commission has found necessary for the service of the public. As appears in the complaint, the Commission has issued certificates of public convenience as to the respective properties of the plaintiffs Stellwagon and Charch, and the statement by counsel for the intervening defendant in its brief and in its oral argument in this Court that since the filing of plaintiffs' complaint a certificate has also issued as to the property of the plaintiffs Karrer and wife, is not challenged. The issuance by the Commission of such certificates of public convenience constitute a finding that the exercise of the power of eminent domain by the defendant electric company is necessary for the convenience, accommodation or safety of the public: *Reed v. Pennsylvania Public Utility Commission,* 174 Pa. Superior Ct. 132, 100 A. 2d 399. If the plaintiffs' properties are *necessary* for the public convenience, accommodation or safety of the public, then the same must be said of defendants' property, since all four properties lie within the route of the transmission line. In their complaint the plaintiffs aver ". . . that the route of the said transmission line will not traverse and cross their respective properties unless said line also traverses

the property of defendants. . . .", and there is no averment suggesting an alternative route or any deviation from the route determined by the company and approved by the Commission. Moreover, as stated by Judge Hirt for an unanimous Court in *Byers v. Pennsylvania Public Utility Commission,* 176 Pa. Superior Ct. 620, 626, 109 A. 2d 232: ". . . The selection of a route for transmission lines is a matter for the public utility in the first instance and unless it is shown that it proposes to exercise the powers conferred upon it wantonly or capriciously the law does not intend that the Commission should withhold its approval merely because another route might have been adopted, which would damage the owners less or lessen the inconvenience to them in the operation of their farm." [Citing cases].

The approval by the Public Utility Commission of the construction of the proposed transmission line here involved has been affirmed by the Superior Court in *Lower Chichester Township v. Pennsylvania Public Utility Commission,* 180 Pa. Superior Ct. 503, 119 A. 2d 674; *Phillips et al. v. Pennsylvania Public Utility Commission,* 181 Pa. Superior Ct. 625, 124 A. 2d 625, and *Willits v. Pennsylvania Public Utility Commission,* 183 Pa. Superior Ct. 62, 128 A. 2d 105. In the *Phillips* case, supra, the function and purpose of the transmission line is thus stated at page 627: ". . . The record reveals that the purpose for the transmission right-of-way is to coordinate the company's system through the Bradford substation to assure adequate service to the Chester-Marcus Hook area. This proposed line will integrate the network to enable it to supplement power deficient areas from adjacent areas having available capacity. The whole enterprise, according to the testimony, will provide for the integration of the present Chester generating station and the proposed Eddy-

24

stone station with other stations of the Philadelphia Electric Company and other Atlantic Seaboard utilities. This, it is. asserted, is essential to national defense and industrial expansion. . . .". In the *Lower Chichester Township* case, supra, the Superior Court affirmed the Commission's approval of the Philadelphia Electric Company's application for the construction of a building on a site in Chester County to house control equipment consisting of switchboards and other necessary equipment essential to the operation of the Bradford substation mentioned in plaintiffs' complaint and in the quotation from the *Phillips* case, supra, which was also approved by the Commission as a necessary adjunct to the proposed transmission line here involved.

Thus it has been made abundantly clear that the transmission line is necessary for the service of the public. It is equally clear that since the electric company cannot condemn the defendants' property because the proposed line will pass within 300 feet of a dwelling thereon (see Act of May 21, 1921, P. L. 1057, 15 PS §1182, referred to supra), this over-all important project necessary for the public service, located throughout with the approval of the Public Utility Commission, must fail unless the company acquires the defendants' land by purchase. Nevertheless, while admitting that the transmission line is necessary for the service of the public, it is contended that equity may not sanction the breach by the individual defendants of their agreement with the plaintiffs. Under the circumstances here presented, we must disagree.

It is well settled that a court will not enjoin the breach of an agreement where performance would be contrary to the public welfare. In 43 C.J.S., Injunctions, §31, p. 465, it is stated: "On an application for an injunction it is the duty of the court to take into consideration the injury or inconvenience which may

result to the public if an injunction is awarded. Accordingly, while there are cases in which an injunction has been granted, ordinarily, when the issuance of an injunction will cause serious public inconvenience or loss, without a correspondingly great advantage to complainant, no injunction will be granted, and this is so, even though, as against defendant, complainant would be entitled to its issuance. The general rule under consideration has been applied where the allowance of an injunction would seriously interfere with or work detriment to public works or works of public benefit, where the issuance of the injunction asked would result in cutting off the public water supply, or the supply of electricity for lights and power, . . .". And see 49 Am. Jur., Specific Performance, §62, p. 76; Restatement, Contracts, §369. In *Elliott Nursery Co. v. Duquesne Light Co.*, 281 Pa. 166, 126 A. 345, we said at p. 173: "It is still the equitable rule that 'The chancellor will consider whether he would not do a greater injury by enjoining than would result from refusing, and leaving the party to his redress at the hands of a court and jury': Richards's App., 57 Pa. 105, 113. . . .".

In *Beasley v. Texas & Pacific Railway Co.*, 191 U.S. 492, it was held by the United States Supreme Court that public policy precluded a decree for the specific performance of a covenant by a railroad company not to build a depot within three miles of a certain other depot contemplated at the time—particularly since the erection of the additional structure had been directed by the State Railroad Commission. In *Texas and Pacific Railway Company v. Marshall*, 136 U.S. 393, the railway company entered into a contract with the City of Marshall to locate and thereafter maintain the railway's terminus, principal office and machine shop within the city. After so locating the terminus and facilities and maintaining them for a

number of years, the railway company proposed to remove the same to another location. The United States Supreme Court directed dismissal of the city's action in equity for the specific performance of the contract on the ground, inter alia, that its performance by the railway company would be inimical to the public interest.

Appellants cite and chiefly rely upon *Evans v. Reading Chemical Fertilizing Co., Ltd.,* 160 Pa. 209, 28 A. 702, and *Quinn v. American Spiral Spring & Manufacturing Co.,* 293 Pa. 152, 141 A. 855. These cases are clearly distinguishable. Both were cases of nuisance. In the *Evans* case, supra, the operation of defendant's plant for manufacturing fertilizing materials, and in the *Quinn* case, the operation of defendant's plant for manufacturing iron and steel springs, was enjoined as injurious to the health and comfort of the respective individual complainants. Appellants quote excerpts from the opinions of the court in these cases as supporting their position. In the first place, the language employed in each of the opinions must be related to the issue decided; when it goes beyond that, it must be considered dictum, and indeed even as dictum it does not under the circumstances here presented, support the appellants' contention. It is evident that in each of the two cases it was argued that the operation of the defendant's manufacturing plant was in the public interest to an extent that justified the application of the principle that an injunction will be refused where its grant would be against the public welfare. The Court recognized this well established principle but held in effect that although the public generally was interested in and benefited from the operation of the industry in each case, such interest and benefit was not sufficient to overcome the complainant's right to enjoy the occupancy of his property free from

the deleterious effects of the operation of the defendant's business. Where the principle here involved comes into play, the extent of the public interest and benefit is the test. See *Elliott Nursery Co. v. Duquesne Light Co.*, supra, where this Court upheld the refusal to enjoin the operation of defendant's electric power plant. In the instant case more than substantial benefit to the public is involved. We are concerned with the supply of light, heat and power which are not merely beneficial but, as appellants admit, and the Public Utility Commission has found, *necessary* for the public welfare.

Judgment affirmed at the cost of appellants.

Mr. Justice COHEN dissents.