579 A.2d 1315

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Lawrence Todd LABELLE.**

Superior Court of Pennsylvania.

Argued June 5, 1989.

Filed Aug. 28, 1990.

Francis P. Sempa, Asst. Dist. Atty., Wilkes–Barre, for Com., appellant.

Arlin M. Adams, Philadelphia, for appellee.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, McEWEN, OLSZEWSKI *, TAMILIA, POPOVICH, JOHNSON and MELINSON *, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT **

ROWLEY, Judge:

Does a driver's guilty plea to summary offenses of driving a vehicle at an unsafe speed, 75 Pa.C.S. § 3361, and reckless driving, 75 Pa.C.S. § 3714, preclude the Commonwealth from maintaining a subsequent action, arising from the same incident, against the driver for driving while under the influence of alcohol, 75 Pa.C.S. § 3731(a)? This is the principal issue presented in this appeal by the Commonwealth from the trial court's order quashing, on double jeopardy grounds, an information charging appellee with

* OLSZEWSKI and MELINSON, JJ., did not participate in this decision.
** This case was reassigned.

driving under the influence ("DUI"). After careful consideration, we vacate the trial court's order and remand for further proceedings.

The relevant facts disclosed at the appellee's preliminary hearing on the DUI charge are as follows: Appellee, Lawrence Todd Labelle, was driving a sports car when he was involved in a one-car accident on the morning of June 2, 1985, in Lackawanna County. His passenger, Mary Ellen Conaboy, suffered serious injuries and was rendered a quadriplegic. Just prior to the accident appellee stopped to purchase gasoline at a truck stop complex. After getting the gas, he drove through the parking lot in a reckless and erratic fashion before stopping in front of the restaurant in the complex. Appellee and his passenger went into the restaurant and came out with two cans of soda. The attendant at the service station portion of the truck stop saw appellee pour the contents of the cans of soda into a liquor bottle and drive away, squealing his tires. Preliminary Hearing Transcript at 26–28. The accident occurred moments later. Appellee was found to have had a blood alcohol level of .24.

The chronological sequence of events following the accident is established by the record. On June 10, 1985, eight days after the accident, Officer Lee Walters signed a complaint charging appellee with driving under the influence of alcohol. One week later, on June 17, 1985, Walters also charged appellee with the summary offenses of driving his vehicle at an unsafe speed and reckless driving. Appellee appeared before District Justice Donald Yurgosky on August 23, 1985 and pled guilty to the two summary offenses. He paid the fines and costs at that time.

Two days later, at his August 25th preliminary hearing, the DUI charge was dismissed by the District Justice pursuant to Pa.R.Crim.P. 130(d), as then interpreted by this Court in its April 26, 1985 decision in *Commonwealth v. Revtai*, 343 Pa.Super. 149, 494 A.2d 399 (1985). The Court held in *Revtai* that Rule 130, which provides for the filing of a complaint against a defendant within five days of his re-

lease after his arrest without a warrant for driving under the influence, was mandatory in nature. Our Court further held that dismissal of the charges was the appropriate remedy for a violation of the five-day deadline.

The decision in *Revtai*, however, was reversed by this Court in *Commonwealth v. Schimelfenig*, 361 Pa.Super. 325, 522 A.2d 605 (1987), on March 18, 1987, before the two-year statute of limitations ran on the DUI charge against appellee. The District Attorney promptly re-filed the DUI charge against appellee on the basis of *Schimelfenig*, and a preliminary hearing was held on April 7, 1987. District Justice Grunik found a prima facie case had been established and bound appellee over for trial.

On May 11, 1987, appellee moved to dismiss the DUI complaint on double jeopardy grounds. The Court of Common Pleas of Lackawanna County granted the motion to dismiss. The Commonwealth now appeals from that order. The sole issue presented by the Commonwealth is whether the trial court erred in granting appellee's motion to quash the information and dismiss the DUI charge on double jeopardy grounds.

The Commonwealth contends that this case is governed by *Commonwealth v. Beatty*, 500 Pa. 284, 455 A.2d 1194 (1983), based upon dicta which appears in the text: "[T]he disposition of a summary offense in a traffic matter prior to the trial of a misdemeanor or felony does not present the type of governmental harassment of a defendant that would offend double jeopardy concerns." *Id.*, 508 Pa. at 291, 455 A.2d at 1198. The Commonwealth's brief, in essence, sets forth a two-fold argument: First, under *Beatty*, the double jeopardy clause is inapplicable to the factual situation before us. Second, even if the double jeopardy clause were applied in the present case, it would not bar prosecution of the DUI charge.

We do not agree with the Commonwealth's first contention, that under *Beatty*, appellee's conviction of the two summary offenses does not give rise to any constitutional double jeopardy concerns. As to the Commonwealth's sec-

ond contention, we hold, for the reasons set forth in section II of this opinion, that the double jeopardy clause may bar prosecution of the DUI charge depending upon what conduct on the part of appellee formed the basis of his summary convictions. Finally, we disagree with appellee's contention that the Commonwealth is "foreclosed" from pursuing prosecution because it failed to take an appeal from the dismissal of the DUI charge from the District Magistrate.

## I.

### A.

An analysis of the applicability of *Beatty* must begin with the recognition that two distinct provisions may bar subsequent criminal actions arising from the same set of circumstances in this Commonwealth, one statutory and the other, constitutional. The statutory provision, section 110 of the Crimes Code, essentially provides that a subsequent prosecution is barred by a former prosecution if the offense was based on conduct arising from the same criminal episode and "if such offense was known to the appropriate prosecuting officer at the time of the commencement of the first trial and was within the jurisdiction of a single court unless the court ordered a separate trial of the charge of such offense." 18 Pa.C.S. § 110(1)(ii).

In *Beatty*, our Supreme Court construed section 110. Two drivers were involved in a collision and pulled their vehicles over to the side of the road. An altercation ensued during which Mr. Beatty broke the other driver's jaw, and then left the scene without identifying himself. After an investigation, Beatty was charged with, and pled guilty to, the summary offense of failing to identify himself at the scene of an accident, 75 Pa.C.S. § 3743. He was also charged with aggravated assault, waived a preliminary hearing, and was bound over for trial. His motion to dismiss the aggravated assault charge was granted by the trial court.

In reviewing the trial court's decision, our Supreme Court applied § 110 of the Crimes Code and the compulsory joinder rule of *Commonwealth v. Campana*, 455 Pa. 622, 314 A.2d 854, *cert. denied*, 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974) (*"Campana II"*). The result was the clear and unambiguous holding that "neither section 110(1)(ii) nor [the] compulsory joinder rule [as set forth in *Campana*] requires the barring of the prosecution of the aggravated assault charge." *Commonwealth v. Beatty, supra,* 500 Pa. at 291, 455 A.2d at 1198.

In the case at bar, appellee concedes that section 110 does not, by itself, preclude the subsequent prosecution. Therefore, the only other possible bar to the subsequent prosecution is constitutional.

The constitutional provision which may preclude a subsequent criminal action, the double jeopardy clause of the Fifth Amendment,[1] is the provision which appellee relies upon in the present case to bar his prosecution for DUI. That provision states that "[n]o person shall be ... subject for the same offence to be twice put in jeopardy of life and limb...." United States Const. Amend. V.

It is well-settled that section 110 claims and Fifth Amendment double jeopardy claims are separate and distinct. *Commonwealth v. Johnson,* 319 Pa.Super. 463, 466 A.2d 636 (1983).[2] In *Johnson,* our Court recognized that section 110 and the double jeopardy clause may at times "overlap in their applications, [but] this is not true in all situations." *Id.,* 319 Pa.Superior Ct. at 470, 466 A.2d at 640. Section 110 and the double jeopardy clause obviously do not overlap in

1. The constitutional guarantee against double jeopardy is applicable to the states through the due process clause of the Fourteenth Amendment. *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). The double jeopardy protection afforded by the United States Constitution generally has been interpreted as coextensive with the protection afforded by Article I, Section 10 of the Pennsylvania Constitution. See *Commonwealth v. Goldhammer,* 507 Pa. 236, 247–48 n. 4, 489 A.2d 1307, 133 n. 4 (1985).

2. See also *Commonwealth v. McAulay,* 361 Pa.Super. 419, 522 A.2d 652 (1987) (separate analyses applied under § 110 and the Fifth Amendment); and *Commonwealth v. Hoburn,* 335 Pa.Super. 536, 485 A.2d 24 (1984) (applying *Johnson* analysis).

the case at bar due to appellee's concession. Therefore, it is unnecessary and indeed inappropriate to consider those cases utilizing a section 110 analysis: *Commonwealth v. Taylor*, 513 Pa. 547, 522 A.2d 37 (1987); *Commonwealth v. Allen*, 506 Pa. 500, 486 A.2d 363 (1984); *Commonwealth v. Breitegan*, 500 Pa. 384, 456 A.2d 1340 (1983); *Commonwealth v. Hoburn*, 335 Pa.Super. 536, 485 A.2d 24 (1984); *Commonwealth v. Kresge*, 317 Pa.Super. 405, 464 A.2d 384 (1983); *Commonwealth v. Dickerson*, 303 Pa.Super. 46, 449 A.2d 570 (1982) (plurality).

It is significant that nowhere in the *Beatty* decision, relied upon by the Commonwealth, is the Fifth Amendment to the United States Constitution, the clause upon which appellee relies, mentioned. *Beatty* was decided under 18 Pa.C.S. § 110 and *Commonwealth v. Campana, supra.* Thus, any reliance by the Commonwealth on the proposition that *Beatty* controls is misplaced. *See* dissenting opinion by Brosky, J. in *Commonwealth v. Evers*, 381 Pa.Super. 568, 554 A.2d 531 (1989) (where appellant challenged the contemplated prosecution only on Fifth Amendment grounds and not upon section 110 or *Campana* compulsory joinder grounds, resolution of the case "must" rest squarely upon a determination of double jeopardy law).

### B.

In determining that *Beatty* does not control, our decision today effectively overrules the decision of a panel of this Court in *Commonwealth v. Evers*, 381 Pa.Super. 568, 554 A.2d 531 (1989). There, the Court held "[i]n this Commonwealth, the constitutional protections of the double jeopardy clause are not implicated where a felony or misdemeanor prosecution is preceded by a conviction before a district justice, whether by summary trial or guilty plea, for a summary offense." *Id.*, 381 Pa.Superior Ct. at 575, 554 A.2d at 534. This decision was clearly erroneous because it was based upon the aforementioned dicta, and not upon the

rule of law as set forth by the Supreme Court in *Beatty* and *Taylor, supra.*[3]

*Evers*, like the case at bar, involved only the constitutional double jeopardy issue and did not involve section 110. The majority recognized as much when it noted "that the holding of the supreme court in *Taylor* rests upon an interpretation of 18 Pa.C.S. § 110(1)(ii)," yet still proceeded to cite *Taylor* as controlling authority. The majority proceeded in such fashion because it was

> unwilling to believe ... that the other statements made by our supreme court in the context of the *Taylor* decision, which do not specifically involve Section 110(1)(ii), are mere surplusage. Our supreme court in *Taylor*, and earlier in *Beatty*, expressly considered and addressed constitutional double jeopardy protections.

*Id.*, 381 Pa.Superior Ct. at 573, 554 A.2d at 533. This was an impermissible use of dictum, given the context of the case.

Our Supreme Court has noted that language which "goes beyond" the issue decided must be considered dictum. *Stellwagon v. Pyle*, 390 Pa. 17, 26, 133 A.2d 819, 823 (1957). Further, the Court has stated that "[g]eneral expressions in an opinion must be considered in the light of and cannot be dissevered from the facts of that case; what is actually decided and controlling is the law applicable to the particular facts of that particular case." *In Re Trust Estate of Pew*, 411 Pa. 96, 105, 191 A.2d 399, 404 (1963) [overruled on other grounds in *Estate of Tyler*, 474 Pa. 148, 377 A.2d 157 (1977) ]. Our Court erred in disregarding the Supreme Court's thorough analysis based upon § 110 and *Campana* principles, and instead relying upon a single reference to

**3.** The result of this determination, that the double jeopardy clause may be applied to summary traffic offenses, is in accord with the Supreme Court's decision in *Borough of West Chester v. Lal*, 493 Pa. 387, 426 A.2d 603 (1981), as well as this Court's decisions in *Commonwealth v. Hoburn*, 335 Pa.Super. 536, 485 A.2d 24 (1984), and *Commonwealth v. Johnson*, 319 Pa.Super. 463, 466 A.2d 636 (1983). *Accord, State v. Dively*, 92 N.J. 573, 458 A.2d 502 (1983) ("Motor Vehicle violations tried in municipal courts are within the category of offenses subject to the Double Jeopardy Clause").

the words "double jeopardy," without any mention of the Constitution, as controlling.

Our colleague Judge Brosky noted in his dissent to *Evers* that § 110 and the compulsory joinder rule of *Campana* "offer greater protection to [an] accused than does the double jeopardy clause." *Commonwealth v. Evers*, 381 Pa.Super. at 579, 554 A.2d at 536 (Brosky, J. dissenting). It is evident that by enacting § 110, the legislature meant in no uncertain terms to protect Pennsylvania citizens from the type of harassment anticipated by drafters of the Fifth Amendment. But for the same reasons as noted previously in this opinion, reliance on *Beatty* and *Taylor* is unwarranted in the case at bar because appellee has raised only a *constitutional* argument, and not one invoking the statutes and case law of Pennsylvania. In *Taylor*, as well as *Beatty*, the *sole* reference to double jeopardy was in the statement, "[o]ur interpretation of section 110(1)(ii), which allows a summary offense to be disposed of prior to the prosecution for the misdemeanor, 'does not present the type of governmental harassment of a defendant that would offend double jeopardy concerns.' " *Taylor*, 513 Pa. at 553, 522 A.2d at 40, quoting *Beatty*.

Any remaining uncertainty as to whether a prior summary conviction can raise double jeopardy concerns is resolved by the recent opinion of the U.S. Supreme Court in *Grady v. Corbin*, —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). In that opinion, which will be discussed at greater length in section II of this opinion, the Court considered whether the State's intended prosecution of respondent on homicide and assault charges deriving from a motor vehicle accident was barred on double jeopardy grounds by respondent's prior convictions, resulting from the same accident, of driving while intoxicated, a misdemeanor, and failing to keep right of the median, a violation comparable to a summary offense under Pennsylvania law. The Court held that the subsequent prosecution was in fact barred, as the State had filed a bill of particulars indicating that it intended to establish essential elements of the more serious of-

fenses by proof of the conduct for which respondent had already been convicted. Thus, the double jeopardy clause of the Fifth Amendment may indeed serve to bar prosecution of a more serious offense once a defendant has been convicted on a summary charge, if the requirements set forth in case law are met.

## II.

### A.

■ Having determined that *Beatty* does not control, and that *Evers* was wrongly decided, we turn our attention to the impact of the double jeopardy clause on appellee's situation of having pled guilty to the offenses of reckless driving, 75 Pa.C.S. § 3714, and driving a vehicle at an unsafe speed, 75 Pa.C.S. § 3361.[4] The constitutional prohibition of double jeopardy consists of three separate guarantees: (1) It protects against a second prosecution for the same offense after acquittal. (2) It protects against a second prosecution for the same offense after conviction. (3) It protects against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).[5] In the case at bar we are concerned with the second guarantee.

Our analysis of appellee's double jeopardy claim begins, but does not end, with the test established by the U.S. Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each

**4.** Although appellee pled guilty to both charges, it was the reckless driving conviction which led the trial court to bar the DUI prosecution on double jeopardy grounds.

**5.** Former Justice (now Chief Justice) Rehnquist has called the words "same offense," used in this context, "a phrase deceptively simple in appearance but virtually kaleidoscopic in application." *Whalen v. United States*, 445 U.S. 684, 700, 100 S.Ct. 1432, 1442, 63 L.Ed.2d 715, 729 (1980) (Rehnquist, J., dissenting).

provision requires proof of an additional fact which the other does not."

*Id.* at 304, 52 S.Ct. at 182, 76 L.Ed.2d at 309, quoted in *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The focus of the *Blockburger* test is on the statutory elements of the offenses at issue. *Ianelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1294 n. 17, 43 L.Ed.2d 616, 627 n. 17 (1975). "If each [offense as statutorily defined] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Id.*

In *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), the U.S. Supreme Court suggested that a prosecution that passes the *Blockburger* test may nevertheless face an additional hurdle. As a result of an automobile accident that resulted in the death of two children, Vitale was charged with failing to reduce his speed and involuntary manslaughter. He was found guilty of the former offense based on evidence that he had recklessly failed to slow his vehicle to avoid a collision with the victims. When the State subsequently sought to prosecute the defendant on the involuntary manslaughter charge, the Illinois Supreme Court held that the double jeopardy clause barred the manslaughter prosecution because the lesser offense of failing to reduce speed required no proof beyond that necessary for conviction of the greater offense of manslaughter.

In its opinion the U.S. Supreme Court observed that if a careless failure to slow is always a necessary element of manslaughter by vehicle under Illinois law, then the two crimes would be the same under the *Blockburger* test; if, on the other hand, the manslaughter offense did not always require proof of a failure to slow, the two offenses would not be the same under *Blockburger*. *Id.* at 419–20, 100 S.Ct. at 2266–67. Instead of ending its analysis with this assertion, however, the Court went on to suggest the following:

In any event, it may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow *or to rely on conduct necessarily involving such failure;* it may concede as much prior to trial. In that case, because Vitale has already been convicted for *conduct* that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under *Brown* [*v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)] and our later decision in *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

*Id.* at 420, 100 S.Ct. at 2267 (emphasis added). Because the Court was uncertain of the relationship of the two offenses under Illinois law and did not know the reckless act or acts upon which the State would rely to prove manslaughter, it vacated the judgment of sentence and remanded the case to the Illinois Supreme Court for further proceedings. *Id.* at 421, 100 S.Ct. at 2267–68.

What was merely suggested in *Vitale* is now, as a result of the Supreme Court's recent opinion in *Grady v. Corbin, supra,* a constitutional mandate: "We hold that the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove *conduct* that constitutes an offense for which the defendant has already been prosecuted." 110 S.Ct. at 2087 (footnote omitted; emphasis added). The case before the Court, like *Vitale* and the case now before us, involved multiple charges arising out of an automobile accident. After allegedly causing the fatal accident, respondent Thomas Corbin pled guilty to driving while intoxicated, a misdemeanor, and failing to keep right of the median, a traffic infraction.[6] He was subsequently indicted on additional charges, including reckless manslaughter,

6. The offense is identified as a traffic infraction in *In re Corbin v. Hillery,* 74 N.Y.2d 279, 543 N.E.2d 714, 545 N.Y.S.2d 71 (1989), the opinion of the New York Court of Appeals in Corbin's case. "A traffic infraction is not a crime and the punishment imposed therefor shall not be deemed for any purpose a penal or criminal punishment...." N.Y.Veh. & Traf.Law § 155 (McKinney 1988).

criminally negligent homicide, and third-degree reckless assault. The New York Court of Appeals, the state's highest court, held that the double jeopardy clause as interpreted in *Vitale* barred prosecution of the charges just mentioned.

In affirming the New York court's judgment, the U.S. Supreme Court explained that although the *Blockburger* test served to guard against the imposition of multiple punishments for a single offense, *id.* 110 S.Ct. at 2090, "a technical comparison of the elements of the two offenses as required by *Blockburger* does not protect defendants sufficiently from the burdens of multiple trials," *id.* 110 S.Ct. at 2093.

> If *Blockburger* constituted the entire double jeopardy inquiry in the context of successive prosecutions, the State could try Corbin in four consecutive trials: for failure to keep right of the median, for driving while intoxicated, for assault, and for homicide. The State could improve its presentation of proof with each trial.... Corbin would be forced either to contest each of these trials or to plead guilty to avoid the harassment and expense.
>
> Thus, a subsequent prosecution must do more than merely survive the *Blockburger* test. As we suggested in *Vitale,* the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

*Id.* 110 S.Ct. at 2093 (citation and footnotes omitted). The Court emphasized that it was not creating an "actual evidence" or "same evidence" test, but that "[t]he critical inquiry is what conduct the State will prove, not the evidence the State will use to prove that conduct." *Id.*

The traditional *Blockburger* test, then, remains the first step in the analysis of a double jeopardy claim. "If application of that test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subse-

quent prosecution is barred." *Id.* 110 S.Ct. at 2090. Because respondent Corbin had conceded that prosecution of the reckless manslaughter, criminally negligent homicide, and reckless assault offenses was not barred under the *Blockburger* test, this step did not detain the Court. *Id.* 110 S.Ct. at 2093. The second step in the Court's analysis, an inquiry into the conduct to be proven by the State, was similarly straightforward. Because the State had filed a bill of particulars indicating that it would establish essential elements of the offenses at issue by proving that Corbin had been driving while intoxicated and had crossed over the median, the conduct for which he had already been convicted, it was apparent that the intended prosecution was barred by the double jeopardy clause. *Id.* 110 S.Ct. at 2094.

### B.

■ Turning to the facts of the present case, we begin by applying the *Blockburger* test "to determine whether there are two offenses or only one." The offense of reckless driving is defined in Section 3714 of the Motor Vehicle Code as follows:

Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of reckless driving, a summary offense.

75 Pa.C.S. § 3714. "This offense has but two elements: an *actus reus*—driving a vehicle; and a *mens rea*—careless disregard." *Commonwealth v. Wood*, 327 Pa.Super. 351, 355, 475 A.2d 834, 836 (1984). Sections 3731(a)(1) and (4) of the Motor Vehicle Code, the provisions under which appellee was charged, define the offense of driving under the influence of alcohol as follows:

A person shall not drive, operate or be in actual physical control of the movement of any vehicle while:

(1) under the influence of alcohol to a degree which renders the person incapable of safe driving; [or]

. . . . .

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

75 Pa.C.S. § 3731(a)(1), (4). This offense has two elements: 1) driving, operating, or being in control of a vehicle; and 2) either a) being under the influence of alcohol to such an extent that one is incapable of safe driving, or b) having an amount of alcohol in the blood that is 0.10 percent by weight or greater. *See Commonwealth v. Griscavage*, 512 Pa. 540, 544, 517 A.2d 1256, 1258 (1986).

A careful comparison of these statutes reveals that each offense contains at least one element that the other does not. Obviously, having consumed alcohol, as shown either by the amount of alcohol in the blood or by the inability to drive safely, is an essential element of DUI but not of reckless driving. Less obviously, reckless driving has as an essential element the act of *driving* a vehicle, an action that has not been an essential element of DUI since § 3731 was amended in 1982 to encompass not only driving a vehicle but also "operating" or "being in actual physical control of the movement" of a vehicle. *See Commonwealth v. Crum*, 362 Pa.Super. 110, 114–15, 523 A.2d 799, 801 (1987). Accordingly, as each offense requires proof of a fact that the other does not, they are not the same under *Blockburger*.[7]

Having determined that the offenses of DUI and reckless driving are not facially the same, we turn to the question of whether the conduct relied upon by the Commonwealth to prosecute appellee on the subsequent charge (DUI) will necessarily be the same as that relied upon to convict him of the first charge (reckless driving). As the Supreme Court suggested in *Vitale* and confirmed in *Corbin*, only if the Commonwealth intends to base the DUI prosecution upon conduct for which appellee has not already been convicted in the reckless driving prosecution will the second prosecution escape the bar of the double jeopardy clause.

7. In *Commonwealth v. Dickerson*, 303 Pa.Super. 46, 449 A.2d 570 (1982), Judge Beck wrote that although DUI requires proof of facts not required by reckless driving, "to prove reckless driving one need allege no new facts" in addition to those required for DUI. *Id.* at 49; 449 A.2d at 572. As hers was a plurality opinion, it is not binding on this Court. In addition, the violation at issue in the case had occurred prior to the 1982 amendment of 75 Pa.C.S. § 3731, and, as noted earlier, the case involves a § 110 analysis.

The conduct necessary to establish a violation of the reckless driving statute at issue in the present case can be proven by a variety of acts and circumstances which do not necessarily include driving under the influence of alcohol. See, e.g., *Commonwealth v. Glassman,* 359 Pa.Super. 230, 518 A.2d 865 (1986) (conduct of driving on the wrong side of roadway, without lights at night, while speeding and not stopping for stop signs constitutes reckless driving); *Commonwealth v. Dandar,* 249 Pa.Super. 327, 378 A.2d 319 (1977) (conduct of speeding in a school zone while there are 40 to 50 children in the area constitutes reckless driving). It may well be that the Commonwealth was prepared to prove at a summary trial that appellee had engaged in conduct which did not involve the presence of blood alcohol and/or its influence but which nevertheless constituted the offense of reckless driving. However, because appellee entered pleas of guilty to the summary offenses, the record does not disclose the nature of the conduct upon which the Commonwealth would have relied to prove the charges against appellee. Unlike the record before the Supreme Court in *Grady v. Corbin, supra,* in which the actions upon which the State intended to base the subsequent prosecution were revealed in terms specific enough to enable the Court to determine that respondent had already been prosecuted for the same conduct, the record in the case before us is devoid of any evidence clearly establishing the identity of conduct that invokes the double jeopardy clause.

Therefore, although appellee asserts that the DUI prosecution is barred by the double jeopardy clause, he has failed to demonstrate, either to the trial court or to this Court, that his conviction on the reckless driving charge was necessarily based on either his blood alcohol level or the effect of alcohol on his ability to drive. Because there are a multitude of facts and circumstances not involving the consumption of alcohol that could be relied upon to prove reckless driving, and the record before us does not reveal the basis for appellee's conviction on that charge, appellee has failed to demonstrate that his prior conviction of reck-

less driving bars, on double jeopardy grounds, a subsequent prosecution for DUI. For this reason, we reverse the trial court's order and remand for further appropriate proceedings.

## III.

■ Having determined that the double jeopardy clause may, but does not necessarily, bar the subsequent prosecution in this case, we address appellee's assertion that the Commonwealth is "foreclosed" from pursuing prosecution of the DUI charge because it failed to take an immediate appeal from the dismissal of the DUI charge by the District Magistrate on the basis of *Commonwealth v. Revtai, supra.* Appellee has failed to cite any authority which is directly applicable, and the case relied upon by appellee, *Commonwealth v. Prado,* 481 Pa. 485, 393 A.2d 8 (1978), is distinguishable.

■ The general rule is that an order dismissing a case for failure to establish a prima facie case is not final because the prosecution can bring the case before any other officer empowered to hold a preliminary hearing. *Commonwealth v. Hetherington,* 460 Pa. 17, 331 A.2d 205 (1975). In *Prado,* pursuant to the relevant local rules of court, only the Motions Judge was authorized to review a petition for rearrest in a homicide case. When the Motions Judge denied the petition, the order was final because there was no authorized judicial officer to whom the rearrest petition could be presented. Thus, the general rule was inapplicable.

In the present case, unlike in *Prado,* there were other District Justices with whom the Commonwealth could have re-filed the charges and before whom the preliminary hearing could have been conducted. Moreover, *Revtai* was overruled prior to the running of the statute of limitations. Thus, nothing barred the Commonwealth from re-filing the DUI charge against appellee. Therefore, the general rule was applicable, and the Commonwealth is not precluded from pursuing the DUI charges even though no appeal was

filed from the dismissal of those charges by the District Magistrate on August 25, 1985.

Reversed and remanded. Jurisdiction is relinquished.

TAMILIA, J., concurs in the result.

BROSKY, J., files a dissenting opinion.

BROSKY, Judge, dissenting.

I dissent. My Brethren in the majority have overlooked the rather fundamental concept of res judicata in their analysis of the within dispute. This concept, I believe, compels affirmance of the order appealed from.[1]

No one seems to dispute that the order of August 25, 1985, dismissing the charge against appellant for non-compliance with Rule 130(d) of the Pennsylvania Rules of Criminal Procedure, was a final and appealable order which terminated the case against appellant. Further, it is conceded that the Commonwealth did not appeal the dismissal of the charge against appellant. Thus, the matter became final, in essence, forevermore. The doctrine of res judicata indicates that once a matter is litigated to a final conclusion, it cannot once again be litigated by those parties. Although the doctrine has had substantially greater application in civil proceedings, it applies as well to criminal matters.

In *Commonwealth v. Bellamy*, 251 Pa.Super. 165, 380 A.2d 429 (1977), this court considered a case where a criminal defendant was discharged for the Commonwealth's failure to comply with Rule 1100.[2] The Commonwealth

---

**1.** Appellee has raised this ground in support of affirmance along with the double jeopardy challenge and a few others similar in nature. Of course, we are bound to affirm the order appealed from if valid reason exists to do so even though the trial court may have rested its decision on other grounds.

**2.** The fact that the appellant was dismissed on Rule 1100 grounds is of great significance because, like the dismissal here, such an action can in no way be construed as an adjudication on the merits or the equivalent of an acquittal upon the facts. Nor, under those circumstances, would "jeopardy" have attached under the longstanding rule that jeopardy attaches when the jury is empanelled or the first witness sworn. Thus the decision rests squarely, from a logical standpoint, on

failed to appeal the dismissal of the defendant but later, actually after expiration of the appeal period, petitioned the trial court for reconsideration. The petition was granted and the court rescinded its prior order. On appeal we found that the failure to appeal the previous order of dismissal rendered the matter res judicata. Our discussion there is instructive:

> An order sustaining a motion to dismiss and discharging an appellant is a final order, and the Commonwealth is entitled to appeal therefrom without any further action on the part of the lower court. *Commonwealth v. Wydo*, 205 Pa.Super. 62, 208 A.2d 12 (1965); *Commonwealth v. Fox*, 181 Pa.Super. 292, 124 A.2d 628 (1956). In the instant case, the Commonwealth was required to file its appeal within thirty days of the entry of the order on August 8, 1975.... No appeal, however, was taken. The Commonwealth's petition to reconsider, filed September 22, 1975, could not extend the thirty day appeal period.... As we stated in *Commonwealth v. Wydo*, supra, "[t]he fact that an order sustaining a [motion for discharge] is final for purposes of appeal precludes any further action on the matter by the lower court. Unless set aside on appeal, the matter becomes res judicata." ...
> "If the court's action was believed to be erroneous, the proper tribunal to determine any error was an appellate court; the burden was on the Commonwealth to appeal."
> . . .

Prior to *Bellamy*, in *Commonwealth v. Yahnert*, 216 Pa.Super. 159, 264 A.2d 180 (1970), we expressed similar comments regarding the Commonwealth's failure to appeal the granting of a demurrer, the appealability of which, at that time, was not questioned. The Commonwealth chose, instead of appealing, to re-indict the appellant on the same charges. We stated, "[t]he Commonwealth having failed to appeal, the action of the court on Bill No. D–42 is res judicata to the charge contained therein.... The effect of

the fact that there was a conclusive disposition of the criminal charge which became final upon the Commonwealth's failure to appeal.

the above was to preclude a new indictment. '[T]he judgment entered on the demurrer, if sustained, is a discharge, and bars a second prosecution for the same cause....' *Commonwealth v. Marino*, 142 Pa.Super. 327, 330, 16 A.2d 314 (1940)." [3] A similar holding was made in *Commonwealth v. Wydo*, 205 Pa.Super. 62, 208 A.2d 12 (1965).

Although, as noted by the majority, ordinarily the dismissal of a complaint by the district magistrate for failure to establish a prima facie case is not a bar to the refiling of a complaint, nor a final and appealable event, this can be explained by the rather simple fact that such action is not considered final as to the charge contained therein. However, the recitation of this principle by the majority is puzzling because in the present case the charge was not dismissed for a failure to establish a prima facie case. Rather, and quite neatly side-stepped by the majority, the discharge in the present case was of a different nature, a dismissal for non-compliance with a rule of procedure/limitation. Unlike a dismissal for failure to establish a prima facie case, a discharge for a violation of Rule 130 is considered both final and appealable. In fact, the Commonwealth, through the office of the District Attorneys, (including the District Attorney's office from which the present case originated), has filed many appeals from the same type of dismissal. Thus, the present case is far different from that where a charge is dismissed for failure to establish a prima facie case,[4] and the majority's failure to answer this

3. Subsequently, it was determined to be a violation of double jeopardy to allow an appeal of a demurrer, at least where a successful appeal on the part of the sovereign would require post appeal litigation. *Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986). However, it is noteworthy that we did not focus on this aspect of the problem in *Yahnert*. In fact, it does not appear that the decision rested on double jeopardy grounds at all. A fair reading of *Yahnert* suggests that we focused on the fact that the order granting a demurrer and discharging the defendant was a final and *appealable* order. Thus the Commonwealth's failure to appeal rendered the matter closed and res judicata precluded the re-indictment or relitigation of the cause.

4. Perhaps just as puzzling is the fashion in which the majority attempts to distinguish the applicability of *Commonwealth v. Prado*, 481 Pa. 485, 393 A.2d 8 (1978), the case strongly relied upon by appellee.

res judicata aspect of the appeal, in at least a plausible fashion, leaves a logical hole in its analysis which greatly weakens their decision. Furthermore, their analysis of the double jeopardy issue is not only premature until this issue is resolved, but it also fails to consider what appears to be a res judicata protection encompassed within the general double jeopardy prohibition.

There is authority indicating that the ancient plea of autrefois acquit, or former acquittal, encompassed within the realm of the double jeopardy protection, does not require an adjudication on the merits but can be based upon a final disposition of the charge on other grounds as well. Perhaps no case demonstrates this point more effectively than that of the United States Supreme Court's decision in *United States v. Oppenheimer*, 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916).

In *Oppenheimer*, the court considered a situation similar in many material facets to the present one. There, Oppenheimer was indicted a second time for a conspiracy to conceal assets from a trustee in bankruptcy, the first having been found time barred. By way of defense "Oppenheimer set up a previous adjudication upon a former indictment for the same offense that it was barred by the one year statute of limitations in the Bankruptcy Act for offenses against that act ... *an adjudication since held to be wrong in another case.*" (emphasis added). Justice Oliver Wendell Holmes, writing for the Court stated:

The majority asserts that unlike the situation in *Prado,* here there were other District Justices before whom the Commonwealth could have re-filed the charges and before whom the preliminary hearing could have been conducted. This may be true, but also seems to be wholly irrelevant since the dismissal here was not based upon a failure to establish a prima facie case. As the dismissal was based upon a violation of Rule 130, re-filing of the charges would have been futile as the law clearly called for dismissal of the charges for such a violation at the time in question. Each and every District Justice would have been duty bound to likewise dismiss the charges; there was no room for discretion or disagreement. The only recourse available to the Commonwealth was the filing of an appeal which it did not do, thus, rendering the dismissal final. Thus, although *Prado* may indeed be distinguishable, distinguishing the case really does not answer the broader question raised.

Upon the merits the proposition of the government is that the doctrine of res judicata does not exist for criminal cases except in the modified form of the 5th Amendment, that a person shall not be subject for the same offense to be twice put in jeopardy of life or limb; and the conclusion is drawn that a decision upon a plea in bar cannot prevent a second trial when the defendant never has been in jeopardy in the sense of being before a jury upon the facts of the offense charged. It seems that the mere statement of the position should be its own answer. It cannot be that the safeguards of the person, so often and so rightly mentioned with solemn reverence, are less than those that protect from a liability in debt. It cannot be that a judgment of acquittal on the ground of the statute of limitations is less a protection against a second trial than a judgment upon the ground of innocence, or that such a judgment is any more effective when entered after a verdict than if entered by the government's consent before a jury is empaneled; or that it is conclusive if entered upon the general issue ..., but if upon a special plea of the statute, permits the defendant to be prosecuted again.

242 U.S. at 87, 37 S.Ct. at 69. There are other recitations of this principle, although possibly having their genesis in the decision in *Oppenheimer*. In 9 ALR 3d, at 223, it is stated that "[w]hile the elements constituting a plea of former conviction or acquittal also support a plea of double jeopardy, the former, but not the latter, plea is limited to a final judgment entered upon the merits." At 21 Am Jur 2d § 321 it is stated "[t]he doctrine of res judicata has essentially two aspects. In some cases, a prior judgment may act as a complete bar to a subsequent prosecution of the defendant. Thus, a prior judgment dismissing an indictment on the ground that the offense charged was barred by the statute of limitations has been held to bar—irrespective of any question of former jeopardy—a second prosecution under a new indictment for the same offense." (citing to *Oppenheimer*, supra.)

The decision in *Oppenheimer* would really appear to be most dispositive of the present case. Like here, there was a discharge of the criminal defendant upon grounds unrelated to his guilt or innocence. Further, there was never an adjudication of the party's guilt or innocence, nor had jeopardy attached in the sense that a jury had been impanelled. Moreover, in both *Oppenheimer* and the present case, the grounds upon which the discharge of the appellant rested had been later found erroneous, thus providing the opportunity for a re-indictment for the same offense. The United States, like the Commonwealth here, had an opportunity to appeal the decision discharging the appellant, but did not. The thrust of the entire decision in *Oppenheimer* rests upon the fact that the criminal defendant had a right to consider the final disposition of the charge as just that, final. Thus, the concept of res judicata, which protects the integrity of final dispositions and bars relitigation of the disposed matter, came into play to bar the second prosecution.[5]

In the present case, the charge against appellant was disposed of in a manner which, at the time, had as much finality as a dismissal based on Rule 1100, the statute of limitations (rule 130 itself is a statute of limitations regarding time limitations for filing criminal complaints), or a demurrer. The fact that the Commonwealth had a right to

[5]. It would seem as well, that the concepts of res judicata and collateral estoppel are firmly intertwined with the constitutional protections of due process and double jeopardy. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), first held that collateral estoppel was a principle embodied in the the double jeopardy clause. Although the focus in *Ashe v. Swenson* centered on the collateral estoppel, i.e. issue preclusion, aspect of the doctrine of res judicata, this focus would appear explained by the fact that res judicata without the collateral estoppel aspect of it, i.e. merger and bar, would not have been applicable to the facts presented there. However, in reaching their conclusion that "this established rule of federal law is embodied in the Fifth Amendment guarantee against double jeopardy", 397 U.S. at 445, 90 S.Ct. at 1195, they recognized that the rule of federal law, the applicability of res judicata/collateral estoppel, had been established more than 50 years earlier in the decision in *Oppenheimer*. Thus, there is strong reason to believe that the United States Supreme Court would consider res judicata (merger and bar) embodied in the double jeopardy protection.

appeal, (in light of the decision in *Smalis v. Pennsylvania,* 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986), a right which is not enjoyed as to all discharges of the criminal defendant), makes their failure to do so and their attempt to relitigate a closed matter, all the more questionable. I dare say, that if the situation were reversed, and previously violations of 130(d) were considered non fatal but the law was subsequently changed by a decision of this Court or our Supreme Court to require strict compliance, I hardly doubt that my colleagues in the majority would seriously entertain an appellants attempt to receive a discharge for the Commonwealth's previous non-compliance with the rule. We would simply respond that the conviction was final and the appellant's failure to appeal the Rule 130(d) violation precluded collateral relief. Why then should our decision be different when it is the Commonwealth who failed to appeal and is now, in essence, seeking the collateral benefit of a favorable decision which it chose not to litigate? I see no reason that it should and the majority has offered none, thus, I dissent.[6]

---

**6.** Although I am in general disagreement with the majority's disposition, I would join in the majority's Opinion, and applaud their decision, to the extent that it calls for the overruling of *Commonwealth v. Evers,* 381 Pa.Super. 568, 554 A.2d 531 (1989). For the reasons set forth in my Dissenting Opinion in *Evers,* it is fairly obvious, upon study of the relevant law, that the majority's holding there, that constitutional double jeopardy protections do not apply or attach to summary convictions or acquittals, is seriously flawed. I am encouraged that Judge Johnson, a member of the majority in *Evers,* has also joined in the majority Opinion calling for the overruling of *Evers.*