515 A.2d 540

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Lester E. JUMPER, Appellee.**

Supreme Court of Pennsylvania.

Submitted May 15, 1986.

Decided Sept. 25, 1986.

*Travaglia,* 502 Pa. 474, 505–06 n. 5, 467 A.2d 288 (1983), *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3547, 83 L.Ed.2d 850 (1984).

Theodore B. Smith, II, Dist. Atty., Eric M. Noonan, Carlisle, for appellant.

Paul Richard Wagner, Andrew S. Gordon, Deputy Atty. Gen., Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

FLAHERTY, Justice.

This is an appeal from an order of the Court of Common Pleas of Cumberland County which quashed an information charging the appellee, Lester E. Jumper, with the offense of homicide by vehicle, 75 Pa.C.S.A. § 3732. The basis for quashing the information was Common Pleas Court's judgment that appellee's alleged failure to have stopped for a red light, and the fatal accident that resulted therefrom, may not form the basis for a homicide by vehicle charge. An appeal was taken to the Superior Court, but, as a result of language in Common Pleas Court's opinion indicating that the homicide by vehicle statute would have been viewed as unconstitutional, on equal protection grounds, if the statute had been regarded as applicable in cases where fatalities are caused by motorists who fail to obey red lights, Superior Court viewed the lower court's ruling as a decision that the homicide by vehicle statute was unconstitutional, and, thus, transferred the case to this Court.

The homicide by vehicle statute, 75 Pa.C.S.A. § 3732, provides as follows:

> Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death.

In holding that this provision is not applicable to cases where fatalities have been caused by motorists who failed to obey red lights, the trial court narrowed the coverage of the statute in a manner that is patently without basis. Examination of the trial court's opinion reveals that its decision was motivated by its belief that the penalties provided by the homicide by vehicle law are too harsh, and, thus, that it did not believe the legislature intended to impose those penalties upon motorists who cause fatalities by committing traffic light violations.

Specifically, the trial court held that traffic light violations cannot fulfill the requirement established by earlier

decisions of this Court that, to support a conviction under the homicide by vehicle law, 75 Pa.C.S.A. § 3732, the Commonwealth must show that the defendant knew or should have known that he was engaging in conduct constituting a Vehicle Code violation of which death was a "probable consequence." *Commonwealth v. Field,* 490 Pa. 519, 525, 417 A.2d 160, 163 (1980). In *Field,* responding to a constitutional challenge, this Court construed the homicide by vehicle statute as requiring culpability as an element necessary for conviction. As stated in *Commonwealth v. Hicks,* 502 Pa. 344, 348, 466 A.2d 613, 615 (1983), appeal dismissed, 465 U.S. 1015, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984), "[S]ection 3732 seeks only to sanction those persons who should reasonably anticipate that their conduct is likely to produce death...." Citing this language from *Hicks,* the trial court in the instant case reasoned that one who proceeds through a red light could not "reasonably anticipate" that death would be a probable consequence of the act.

■ We believe that such reasoning is erroneous, and that traffic light violations are no less likely to result in fatalities than are the multitude of other traffic offenses that involve a potential for violent collisions. Indeed, a primary purpose of having traffic lights at intersections is to prevent the collisions that would occur if vehicles were permitted unrestrained entry into intersections from conflicting directions at the same time. One would have to ignore common sense and experience to regard as cogent the trial court's holding that, as a matter of law, death is never a probable consequence of the wrongful failure to stop for a red light. Frequent indeed is the situation where pedestrians and motorists are seriously endangered by motorists who inexcusably fail to heed traffic signals.

■ Under the homicide by vehicle statute, culpability is to be determined in each given case in light of the particular facts surrounding the Vehicle Code violation on which the homicide charge is predicated, and a determination must be made as to whether death was a probable consequence of the defendant's conduct. *Commonwealth v. Hicks,* 502 Pa.

at 347–348, 466 A.2d at 615; *Commonwealth v. Field*, 490 Pa. at 525, 417 A.2d at 163. In the instant case, therefore, it was error for the trial court to quash the information on grounds that, as a matter of law, fatalities cannot be a probable consequence of the disobedience of traffic signals.

■ Further, it is to be noted that the addendum to the trial court's opinion states that the major portion of the opinion expressing the view that the homicide by vehicle statute is unconstitutional on equal protection grounds was written prior to the announcement of this Court's decision in *Commonwealth v. Hicks*, supra. In *Hicks*, this Court rejected a similar equal protection challenge to the same statute, thereby holding that classifications drawn by the statute are rationally related to legitimate state interests in reducing highway fatalities. 502 Pa. at 348, 466 A.2d at 615. Nevertheless, appellee continues to assert that equal protection is violated in that the statutory scheme creates differences in criminal liability among persons who unintentionally cause fatalities, and that those differences rest upon the allegedly arbitrary factor of whether the person causing any given fatality is a motorist or a non-motorist. Specifically, although the offense of homicide by vehicle and the offense of involuntary manslaughter are both classified as misdemeanors of the first degree, and are both quite similar in nature, there are different elements of proof, to wit, different types of wrongful conduct, that are requisite to the two offenses. The argument that this constitutes a violation of equal protection has already been considered and rejected by this Court in *Hicks*, 502 Pa. at 348–349, 466 A.2d at 615 n. 5. In short, as stated in *Hicks*, "the class of individuals responsible for non-vehicle deaths which are unintentional and the class of persons whose violations of the Vehicle Code cause death are not similarly situated with respect to the homicide by vehicle statute's distinct purpose of reducing highway fatalities." *Id.*

■ As an additional equal protection argument, appellee asserts that the penalty for the crime of homicide by vehicle is more severe than that for the crime of involuntary

manslaughter, and, inasmuch as both of these crimes involve unintentionally caused deaths, it is alleged that the difference in penalty is violative of equal protection. Specifically, although homicide by vehicle and involuntary manslaughter are both misdemeanors of the first degree, and both carry with them the potential for five years imprisonment and a $10,000.00 fine, 18 Pa.C.S.A. § 1101, 1104, a motorist who is convicted of homicide by vehicle is subject to revocation of his vehicle operating privileges, 75 Pa.C.S.A. § 1532(a), but one who is convicted of involuntary manslaughter is not subject to a similar statutorily imposed revocation of such privileges. Appellee contends that this violates equal protection, arguing that the crime of involuntary manslaughter, which has as an element recklessness or gross negligence, involves conduct that is more culpable than that required for homicide by vehicle, and, thus, that the heavier penalty is being imposed upon the less culpable party. We disagree, however, for the Commonwealth has a legitimate interest in discouraging specific evils, to wit, types of conduct which the legislature has judged to be of greater societal consequence. Further, a statutory classification such as the present one will be upheld so long as it bears a rational relationship to a legitimate state interest. *Hicks*, 502 Pa. at 347–348, 466 A.2d 615.

In cases where there has been a homicide by vehicle conviction, there has been conduct by a motorist that is adverse to the legislature's goal, discussed in *Hicks*, supra., of promoting adherence to the laws governing the operation of vehicles so as to reduce highway fatalities. Involuntary manslaughter, however, is a more general crime, having no inherent connection with motor vehicle use, see 18 Pa.C.S.A. § 2504(a), and, even in cases where motor vehicles have been utilized to commit the crime of involuntary manslaughter, violations of Vehicle Code provisions are not a specific element of the offense. The legislature, therefore, has determined that deaths attributable to Vehicle Code violations of a palpable nature are a specific evil to be addressed, and that they have such societal consequence as to warrant

revocation of offenders' operating privileges. In choosing to take action against fatalities caused by Vehicle Code violations, through revocation of offenders' operating privileges, the legislature is not constrained to impose identical penalties upon those guilty of involuntary manslaughter, for persons guilty of the latter offense are not similarly situated with respect to the homicide by vehicle statute's distinct purpose of reducing the number of highway fatalities attributable to Vehicle Code violations. We conclude, therefore, that there is a rational basis for the difference in penalties imposed, and, thus, that the homicide by vehicle statute withstands scrutiny on equal protection grounds.

Order reversed.