538 A.2d 66

**In the Interest of Robert M. HYDUKE.**

**Appeal of Robert M. HYDUKE.**

Superior Court of Pennsylvania.

Argued Nov. 17, 1987.

Filed Feb. 16, 1988.

---

Ken Gormley, Pittsburgh, for appellant.

Before WIEAND, MONTEMURO and POPOVICH, JJ.

MONTEMURO, Judge:

Robert M. Hyduke, a seventeen (17) year old juvenile, appeals from the judgment of sentence of the Court of Common Pleas of Westmoreland County entered on March 25, 1987. Appellant was adjudicated delinquent on two (2) counts of homicide by vehicle and placed on probation for a period of eighteen (18) months. In addition, the court directed appellant to: (1) pay the costs of the proceedings; (2) refrain from all violations of the law; (3) comply with the regulations of the Westmoreland County Juvenile Service Center; (4) perform seventy (70) hours of community service; (5) enter and complete an alcohol safe driving program, and; (6) pay a fine of $500 within a period of five (5) months. We affirm.

The events of this tragic story began on June 21, 1986. Appellant, then seventeen (17), met his friend Brian Aikins at about 10 p.m. They went in separate vehicles to a party located in Kingston, Pennsylvania. During appellant's one hour stay at the party he consumed two cups of beer, before beginning the drive home. Aikins left the party at the same time, taking a fifteen (15) year old girl named Adrienne Angell with him in his vehicle. Appellant pulled out from the party first, but Aikins' vehicle passed him shortly after his departure. When appellant arrived at the stop-light at Route 981, he observed the Aikins vehicle stopped in a parking lot. Appellant pulled into the lot and found Aikins standing outside his vehicle with Adrienne Angell still inside. Aikins informed appellant to go on ahead and that he would see him later. Appellant left the parking lot and traveled North on Route 981, a two lane asphalt road, towards his home in New Alexandria. The weather conditions were clear and dry and the posted speed limit on Route 981 was fifty five (55) miles per hour. Appellant was unable to recall the events following the time he began to travel North on route 981, but the trial court, through the aid of accident reconstruction experts and various other witnesses, formulated the following scenario:

Approximately one and one-half miles before reaching New Alexandria, Route 981, which is generally a level and straight road, begins a gradual right-hand curve and a slight down grade. The juvenile/appellant lost control of his automobile, crossed the center lane and into the southbound lane of traffic. The juvenile crossed over the southbound lane onto the berm and his car turned sideways colliding with a utility pole broadside. The distance when the juvenile/appellant's vehicle entered the berm until it struck the utility pole broadside was 220 feet. The juvenile's automobile sheared off the top of the utility pole and then his car rotated counter-clockwise and then traveled approximately 153 feet into a four feet deep fifteen feet wide gully. When the car hit the gully it catapulted into the air and came to rest on the side of the road at a distance of 168 feet from the utility pole. Upon

the impact with the gully and the impact with the ground, the juvenile was thrown out of the car window. A copy of the Pennsylvania State Police Officer's drawing of the scene that was admitted into evidence is attached to this opinion to clarify the various vehicles involved and the relevant points.

A truck driven by Mario Venzin with his family was traveling South on Route 981. Venzin saw the juvenile/appellant sliding towards his truck in the south lane. Venzin swerved into the northbound lane narrowly missing the juvenile defendant and then returned his truck to the southbound lane. An automobile driven by Timothy Shearer was behind the Venzin truck in the southbound lane. Shearer was traveling approximately forty miles per hour. When the juvenile/appellant sheared off the utility pole, the pole fell into and across the highway. Shearer had no time to react before his car hit the utility pole, and upon striking the same he was carried along the utility pole into the northbound lane where his vehicle came to a rest.

Brian Aikins, who was following the juvenile/appellant operating his vehicle in a northerly direction (the same direction as the juvenile/appellant) applied his brakes and left 128 feet of skid marks up to the point where the Aikins' vehicle struck Shearer's vehicle. As a result of the collision between the Shearer and Aikins' vehicles, both Brian Aikins and Adrienne Angell were killed.

Appellant was charged with two (2) counts of homicide by vehicle,[1] based on citations issued him for failure to drive on the right side of the roadway,[2] and for failure to drive at a safe speed.[3] The trial court adjudicated appellant delinquent on both counts of homicide by vehicle and sentenced him to serve a period of eighteen (18) months probation. This timely appeal followed the denial of appellant's post-trial motions.

1. 75 Pa.C.S.A. § 3732.
2. 75 Pa.C.S.A. § 3301(a).
3. 75 Pa.C.S.A. § 3361.

Appellant raises five (5) contentions on appeal: [4]

I. The trial court erred in finding that the Commonwealth established a violation of the Vehicle Code.

II. The trial court erred in finding that the Commonwealth established culpability on the part of the defendant.

III. The trial court erred in finding that the defendant's actions were the legal cause of the deaths.

IV. The homicide by vehicle statute is unconstitutional as applied to defendant in this case, without proof of reckless or criminally negligent conduct.

V. The trial court erred by failing to admit the testimony of proffered witnesses to further demonstrate the inherently dangerous condition of the road.

Under the Vehicle Code, the offense of homicide by vehicle is defined as follows:

> Any person who unintentionally causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3731 (relating to driving under the influence of alcohol or controlled substance) is guilty of homicide by vehicle, a misdemeanor of the first degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732, as amended 1982, December 15, P.L. 1268, No. 289, Section 10, effective in thirty days.

There are two violations underlying the homicide by vehicle charge in this case. The first of these violations is of 75 Pa.C.S.A. § 3301(a), which provides in pertinent part:

> (a) General rule—Upon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway except as follows ...

Appellant was also charged with a violation of 75 Pa.C.S.A. § 3361, which provides:

---

**4.** We note with disapproval that appellant has exceeded the allowable fifty (50) page limit on the length of appellate briefs without court approval. *See* Pa.R.A.P. 2135.

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead. Consistent with the foregoing, every person shall drive at a safe and appropriate speed when approaching and crossing an intersection or a railroad grade crossing, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions.

In order to sustain a conviction or an adjudication of delinquency for homicide by vehicle, the Commonwealth must establish (1) that the defendant had deviated from the standard of care established by the underlying traffic regulation which had allegedly been violated, and (2) that the defendant's violation of the regulation caused the victim's death. *Commonwealth v. Jumper*, 511 Pa. 446, 449, 515 A.2d 540, 541 (1986); *Commonwealth v. Field*, 490 Pa. 519, 525, 417 A.2d 160, 163 (1980). Recently, our supreme court definitively answered the question of the level of culpability which the Commonwealth is required to establish in a homicide by vehicle case. In *Commonwealth v. Heck*, 517 Pa. ——, ——, 535 A.2d 575, 577 (1987), the Court held that a conviction for homicide by vehicle may not stand on a finding of ordinary negligence. In so holding, the court instructed that the minimum level of culpability required to sustain a conviction for homicide by vehicle is criminal negligence as defined in 18 Pa.C.S.A. § 302(b)(4), which provides:

A person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of

his conduct and the circumstances known to him, *involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation.*

*Id.*, 517 Pa. at ——, 535 A.2d at 579–80.

Consequently, the *Heck* case makes it clear that the Commonwealth must prove (1) that the defendant's conduct involved a gross deviation from the standard of care established by the underlying traffic regulation, taking into account the nature and intent of the defendant's conduct and the circumstances known to him, and (2) that the defendant's violation of the regulation caused the victim's death.

■■■■ Appellant's first claim is that the Commonwealth failed to prove that he violated the Vehicle Code. More specifically, appellant asserts that the evidence was insufficient to establish that he had crossed the center line or that he had failed to drive at a safe speed, in violation of 75 Pa.C.S.A. §§ 3301(a) and 3361 respectively. After hearing testimony from accident reconstruction experts on behalf of both the Commonwealth and the appellant, the trial court found that appellant was traveling at approximately eighty five (85) miles per hour when he lost control of his vehicle and crossed into the southbound lane, eventually shearing off the utility pole which fell across the road and caused the fatal Shearer–Aikins collision.[5] Contrary to appellant's assertion, we conclude that these findings are more than sufficient to establish both Vehicle Code Violations. *See Commonwealth v. Eichelberger*, 364 Pa.Super. 425, 528 A.2d 230 (1987) (determination by fact finder that vehicle was unexplainably in the wrong lane sufficient to establish underlying offense for homicide by vehicle charge).

5. The record reflects that the Commonwealth's expert testified that the appellant had been traveling at a minimum of seventy seven (77) to eighty five (85) miles per hour. Although there was conflicting evidence presented by the defense expert, the trial court apparently resolved the issue of credibility in favor of the Commonwealth, which it was free to do.

■ We also reject appellant's argument that the Commonwealth failed to establish the requisite degree of culpability in this case. Appellant's conduct, namely, traveling at approximately eighty five (85) miles an hour losing control of his vehicle and crossing the center line, clearly constitutes a gross deviation from the standard of care which a reasonably prudent person would exercise under like circumstances. Appellant knew or should have known that his actions posed a significant threat of death or serious bodily injury to others. His conduct clearly satisfies a finding of at least criminal negligence, if not recklessness, as required by *Heck, supra.*

■ Similarly, with respect to appellant's claim that his actions were not the legal cause of the victims' deaths, we find no merit. The causal analysis in a homicide by vehicle case focuses on whether death was a probable consequence of the defendant's actions. *Jumper,* supra, 511 Pa. at 449, 515 A.2d at 541. In *Commonwealth v. Kostra,* 349 Pa.Super. 89, 502 A.2d 1287 (1985), we stated:

> The Commonwealth must prove that the death occurred as a result of injuries received in the incident or of a chain of events stemming from the incident. Causation is an issue of fact for the jury. A defendant's actions are the legal cause of death if they are a direct and substantial factor in bringing it about. So long as a defendant's actions are a direct and substantial factor in bringing about death, legal responsibility may be found. A defendant cannot escape criminal liability for homicide if his act starts an unbroken chain of causation which leads to death.

*Id.,* 349 Pa.Superior Ct. 93, 502 A.2d at 1289 (citations omitted).

■ In the instant case appellant operated his vehicle at an unsafe speed such that he was unable to successfully negotiate the curve or bring his vehicle to a stop. Appellant's vehicle proceeded across the highway and felled a utility pole before eventually coming to a crashing halt some one hundred and fifty (150) feet later. The utility pole landed directly in front of the Shearer vehicle, which was

traveling southbound, directing the vehicle into the northbound lane where it was struck by the oncoming Aikins vehicle. The result of this unbroken chain of events, initiated by appellant's Vehicle Code violations, was the death of both Brian Aikins and Adrienne Angell. We find that the causal nexus between appellant's conduct and the victims' deaths is not so tenuous as to absolve him from criminal responsibility.[6]

■ Appellant also claims that the homicide by vehicle statute as applied to him is violative of both the United States and Pennsylvania Constitutions without a showing of criminal negligence or recklessness on his part. In light of our supreme court's recent decision in *Heck,* supra, and our conclusion that appellant's conduct rose to the level of criminal negligence, we find no merit in appellant's contention.

■ The final challenge raised by appellant is that the trial court erroneously excluded the testimony of several lay witnesses, who would have testified that numerous accidents had occurred at the same curve where appellant lost control of his vehicle. As a general rule matters relating to the admissibility of evidence are controlled by the trial court's discretion and an appellate court will not reverse the trial court's ruling absent a clear abuse of discretion. *See Commonwealth v. Cargo,* 498 Pa. 5, 444 A.2d 639 (1982). Although appellant contends that specific instances of other accidents on the same stretch of roadway demonstrates that the corner in question is inherently dangerous, the trial court concluded that the fact that other accidents had occurred on this particular stretch of roadway was not probative of whether appellant exercised the requisite standard of care in this instance. Moreover, the trial

6. We reject appellant's contention that Brian Aikins' failure to travel at a safe speed should be viewed as a superseding intervening cause of the deaths. The short response to this argument is that "contributory negligence of the victim is not a defense to a criminal charge of homicide by vehicle if the defendant's actions were a substantial factor in causing the death." *Commonwealth v. Heck,* 341 Pa.Super. 183, 213, 491 A.2d 212, 227 (1985).

court was apparently influenced by the Commonwealth's argument that such testimony would open up collateral matters, such as the weather conditions at the time of the other accidents and the conduct of the other drivers, which were not pertinent to the present case. We find that the trial court did not abuse its discretion in excluding the proffered testimony.

Accordingly, the judgment of sentence is affirmed.