582 A.2d 1093

**In the Matter of Jelbert HUFF, Jr., a minor.**

**Appeal of Jelbert HUFF, Jr.**

Superior Court of Pennsylvania.

Argued March 30, 1990.

Filed Nov. 21, 1990.

Petition for Allowance of Appeal Granted March 5, 1991.

576

Thomas D. Heberle, Corry, for appellant.

D. Sherwood Jones, Asst. Dist. Atty., Erie, for Com., participating party.

Before CIRILLO, President Judge, and WIEAND, McEWEN, MONTEMURO, BECK, KELLY, JOHNSON, HUDOCK and FORD ELLIOTT, JJ.

HUDOCK, Judge:

On April 26, 1987, the Appellant, who was then 17 years old, was involved in an automobile accident in which the vehicle he was driving struck and killed a seven-year-old boy. On May 14, 1987 the Pennsylvania State Police issued two citations charging the Appellant with reckless driving [1]

1. 75 Pa.C.S.A. § 3714.

and driving at an unsafe speed[2]. A hearing was held June 2, 1987, on the two summary traffic offenses before a district justice. At the conclusion of the hearing, the Appellant was found guilty of both summary offenses. On July 15, 1987, the Erie County Juvenile Probation Department filed a delinquency petition charging the Appellant with one count of homicide by vehicle[3]. The petition was later amended to include an additional allegation of aggravated assault[4]. The Appellant claims that the Commonwealth is prevented from proceeding on the petition on the grounds of double jeopardy and collateral estoppel. The trial court held that the Commonwealth was not barred. We affirm.

The issue before this Court can be summarized as follows: Whether the concepts of double jeopardy or collateral estoppel as embodied in the Fifth Amendment to the United States Constitution prevent the Commonwealth from proceeding against the Appellant in juvenile court on charges of homicide by vehicle and aggravated assault following his prior conviction of two summary traffic violations before a district justice.[5]

We note at the outset that a recent panel of this Court in *Commonwealth v. Evers*, 381 Pa.Super. 568, 554 A.2d 531 (1989), held that "the constitutional protections of the double jeopardy clause are not implicated where a felony or misdemeanor prosecution is preceded by a conviction before a district justice, whether by summary trial or guilty plea for a summary offense". That court reached its conclusion based on dicta in *Commonwealth v. Beatty*, 500 Pa. 284, 455 A.2d 1194 (1983), later repeated in *Commonwealth v.*

2. 75 Pa.C.S.A. § 3361.
3. 75 Pa.C.S.A. § 3732.
4. 18 Pa.C.S.A. § 2702.
5. Appellant's collateral estoppel argument is without merit. Collateral estoppel requires that where an ultimate fact has been necessarily established *in favor of a defendant* in a former prosecution, the issue may not be re-litigated in any subsequent proceeding against the defendant. *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). *See also In the Interest of R.R.*, 317 Pa.Super. 334, 464 A.2d 348 (1983). In the present case, the Appellant was found guilty of both summary offenses.

*Taylor,* 513 Pa. 547, 522 A.2d 37 (1987), stating, "The disposition of a summary offense in a traffic matter prior to the trial of a misdemeanor or felony does not present the type of government harassment of a defendant that would offend double jeopardy concerns." In *Commonwealth v. LaBelle,* 397 Pa.Super. 179, 579 A.2d 1315 (1990) (en banc), we found the *Evers* court's reliance on this language misplaced because both *Taylor* and *Beatty* involved the application of 18 Pa.C.S.A. § 110 and the compulsory joinder rule of *Commonwealth v. Campana,* 455 Pa. 622, 314 A.2d 854, *cert. denied,* 417 U.S. 969, 94 S.Ct. 3172, 41 L.Ed.2d 1139 (1974) (*"Campana II"*). Neither case purported to deal with the *constitutional* protections of the double jeopardy clause as applicable to summary offenses. Finding the decision was based on this misinterpretation of *Beatty* and *Taylor,* we overruled that decision in *LaBelle,* holding that the "double jeopardy clause of the Fifth Amendment may indeed serve to bar prosecution of a more serious offense once a defendant has been convicted on a summary charge, if the requirements of case law are met." *LaBelle* at 189, 579 A.2d at 1320.

It is well settled that the constitutional prohibition against double jeopardy is applicable to juvenile proceedings. *Breed v. Jones,* 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975), *In the Interest of R.R., supra, In the Interest of George S., III,* 286 Pa.Super. 217, 428 A.2d 650 (1981). *See also Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980).

■ In deciding whether the double jeopardy clause would bar an adjudication of delinquency in the present case, we are guided by the recent decision of the United States Supreme Court in *Grady v. Corbin,* —— U.S. ——, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). In that case, two traffic citations were issued to the defendant; one charging driving while intoxicated and the other charging failing to keep to the right. Three days later an assistant district attorney began gathering evidence for a homicide prosecution but failed to inform the town court of that investigation

or ascertain when the defendant was scheduled to appear for trial on the summary offenses. The defendant later pled guilty to the two traffic offenses. When a grand jury brought back an indictment two months later charging the defendant with reckless manslaughter, second degree vehicular manslaughter, and criminally negligent homicide, the defendant sought a writ of prohibition barring prosecution on all counts of the indictment claiming double jeopardy barred the prosecution. In upholding his claim, the Supreme Court held that in determining whether or not subsequent prosecution is barred by double jeopardy, the court must first apply the traditional test first enunciated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). "If application of the test reveals that the offenses have identical statutory elements or that one is a lesser included offense of the other, then the inquiry must cease, and the subsequent prosecution is barred". *Grady* at ——, 110 S.Ct. at 2090, *citing Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). The test for determining whether an offense is a lesser included offense is whether each and every element of the lesser offense is necessarily an element of the greater offense. *Commonwealth v. Thomas*, 376 Pa.Super. 455, 546 A.2d 116, *app. den.* 520 Pa. 616, 554 A.2d 509 (1988); *Commonwealth v. Pemberth*, 339 Pa.Super. 428, 489 A.2d 235 (1985); *Commonwealth v. Williams*, 299 Pa.Super. 278, 445 A.2d 753 (1982). The court in *Grady* also found that this is not the only standard for determining whether violations of the double jeopardy clause exist. "[T]he double jeopardy clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted". *Grady* at ——, 110 S.Ct. at 2093. "The critical inquiry is what conduct the state will prove, not what evidence the state will use to prove that conduct". *Id.*

 Applying the analysis employed by the Supreme Court in *Grady* to the present case, we must first determine

whether the intended prosecution would violate the parameters announced in *Blockburger, supra.* The offense of reckless driving is defined in Section 3714 of the Motor Vehicle Code as follows: "Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of reckless driving, a summary offense." 75 Pa.C.S.A. § 3714. The driving vehicle at safe speed provision provides, *inter alia:*

No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing, nor at a speed greater than will permit the driver to bring his vehicle to a stop within the assured clear distance ahead.

75 Pa.C.S.A. § 3361. A technical comparison of the elements necessary to prove these two summary offenses [6] with the elements of aggravated assault fails to demonstrate that the Commonwealth is attempting to prosecute the Appellant for a lesser included offense under *Blockburger, supra.* Aggravated assault, as alleged by the Commonwealth in the instant case, requires proof that a person "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702. While both reckless driving and driving at an unsafe speed require proof that the Appellant was driving a vehicle, aggravated assault does not. Additionally, aggravated assault requires proof that the Appellant attempted to inflict serious bodily

6. There has been some confusion as to whether a court should limit its inquiry to the statutory elements of the offenses alleged, or should consider the factual circumstances of the case in determining if two offenses are the "same offense" under *Blockburger, supra. See Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977); *Illinois v. Vitale, supra.* However, in view of the recent holding in *Grady v. Corbin, supra,* which provides for an examination of the conduct alleged in determining if two offenses are the same for double jeopardy purposes after the application of *Blockburger,* we find it appropriate to limit our discussion only to a comparison of the statutory elements of the crimes. *See generally Commonwealth v. LaBelle, supra.*

injury or that serious bodily injury occurred; an element of proof not required for either of the summary charges here involved. Since aggravated assault and the two summary charges each require an element of proof which the other does not, they are clearly not the same offense.

Homicide by vehicle requires the Commonwealth to prove that (1) the Appellant drove in a manner that violated the Motor Vehicle Code, (2) the Appellant knew or should have known that his conduct violated the law and (3) the death was the probable result of the Motor Vehicle Code violation. *Commonwealth v. Uhrinek*, 518 Pa. 532, 544 A.2d 947 (1988); *See also In the Interest of Hyduke*, 371 Pa.Super. 380, 538 A.2d 66 (1988). Since evidence of a speed violation is not *always* necessary to prove a charge of homicide by vehicle, 75 Pa.C.S.A. § 3361 is not a lesser included offense. *In the Interest of R.R., supra.*

It appears however, that reckless driving is properly considered a lesser included offense of homicide by vehicle. The only proof necessary to establish reckless driving is that the Appellant drove a vehicle in careless disregard for the safety and property of others. *Commonwealth v. Glassman*, 359 Pa.Super. 230, 518 A.2d 865 (1986), *app. den.* 515 Pa. 574, 527 A.2d 535 (1987). The *mens rea* of reckless driving, "careless disregard", implies "less than willful or wanton conduct ... [but] ... more than ordinary negligence or the mere absence of care under the circumstances...." *Commonwealth v. Podrasky*, 250 Pa.Super. 57, 378 A.2d 450 (1977). Likewise, in order to prove homicide by vehicle, the Commonwealth must prove more than ordinary negligence, *Commonwealth v. Heck*, 517 Pa. 192, 535 A.2d 575 (1987), and there must be proof that the defendant's conduct was "criminally negligent" or "reckless".[7] *Commonwealth v. Heck, supra; Common-*

---

7. We note that a panel of this court in *Commonwealth v. Spurgeon*, 285 Pa.Super. 563, 428 A.2d 189 (1981), determined that a prior acquittal of reckless driving would not preclude prosecuting the defendant on a charge of homicide by vehicle. In rejecting the argument that reckless driving is a necessary element of homicide by vehicle, the court held that "[s]ection 3732 does not require a showing of

*wealth v. Scheuing,* 517 Pa. 407, 537 A.2d 1370 (1988). Since both elements of reckless driving, i.e., the *actus reus* of driving a vehicle and the *mens rea* of careless disregard, will necessarily be proven in a prosecution for homicide by vehicle, we conclude that reckless driving is a lesser included offense of homicide by vehicle.[8] Thus, absent an exception to the applicability of the double jeopardy clause, prosecution of the homicide by vehicle charge would be barred under *Blockburger, supra.*

 Although we concluded earlier that neither failure to drive at a safe speed nor reckless driving were lesser included offenses of aggravated assault, our inquiry does not stop. As instructed by the Supreme Court in *Grady v. Corbin, supra,* we must next look to determine whether the Commonwealth, in supporting the delinquency petition, is attempting to reprove conduct which formed the bases for the Appellant's convictions on the summary offenses. While the Commonwealth is not prevented from using *any* of the evidence presented in the first prosecution, or presenting new evidence, no evidence may be introduced which would prove conduct constituting an offense for which the Appellant had previously been convicted. From the opinion of the trial court, it appears that the Commonwealth concedes that it would rely on the Appellant's summary convictions in proving the allegations of delinquency. Notably, the Commonwealth does not dispute this fact. Thus, based on the record before us, it would appear that proceeding on the petition would violate *Grady*'s "same conduct" test. It is the Commonwealth's assertion however, that a jurisdictional exception to the double jeopardy

reckless or negligent culpability on the defendant's part in order to sustain a conviction and creates strict criminal liability without regard to any scienter element." This decision was overruled however, *sub silentio,* in *Commonwealth v. Heck, supra.*

8. In this case, our conclusion that reckless driving is a lesser included offense of homicide by vehicle is further supported by the Commonwealth's concession, discussed more fully *infra,* that it intends to rely on the convictions of the summary offenses, presumably including the reckless driving conviction, to meet its burden in the delinquency proceeding.

clause should be recognized since no single court had jurisdiction over both the summary offenses and the delinquency proceeding.

■■■ Justice Brennan, in his concurring opinion in *Ashe v. Swenson*, 397 U.S. 436, 457 n. 7, 90 S.Ct. 1189, 1199 n. 7, 25 L.Ed.2d 469 (1970), recognized three exceptions to the double jeopardy clause, one being the jurisdictional exception. Simply stated, if no single court has jurisdiction over all the alleged crimes, an exception to the double jeopardy clause would exist. *See Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912) (Jeopardy cannot extend to an offense beyond the jurisdiction of the court in which the accused is tried); *Daniel v. Warden, State Correctional Institution at Huntington, Pa.*, 794 F.2d 880 (1986). While the United States Supreme Court has neither explicitly accepted nor rejected the exception, we find compelling reasons justifying the express recognition of such an exception in instances where juvenile adjudications are preceded by a disposition of summary offenses before a district justice.[9]

Our legislature has created a separate legal system for the adjudication of juvenile offenders. The Juvenile Act, 42 Pa.C.S.A. §§ 6301, *et seq.*, (the Act), grants jurisdiction to the juvenile court over proceedings in which a child is alleged to be delinquent or dependent. *Id.* at § 6303. Under the Act, "delinquent act" is defined as "an act designated a crime under the law of this Commonwealth ... [but]

9. We note that New Mexico adopted a jurisdictional exception in *State v. Goodson*, 54 N.M. 184, 217 P.2d 262 (1950) where the court held that the appellant's conviction on assault and battery in the justice court did not bar a later prosecution for rape because the justice of the peace did not have jurisdiction to hear the felony rape charge. The New Mexico Supreme Court reaffirmed its position in *State v. Manzanares*, 100 N.M. 621, 674 P.2d 511 (1983) *aff'd sub nom. Fugate v. New Mexico*, 470 U.S. 904, 105 S.Ct. 1858, 84 L.Ed.2d 777 (1985), reasoning that because the *magistrate* did not have jurisdiction over the felony charge, the exception was applicable to a prosecution for homicide by vehicle before a magistrate after conviction of several misdemeanor traffic offenses. The jurisdictional exception which we adopt is necessary because *neither* the district justice nor the juvenile court had jurisdiction over both matters, unlike New Mexico where only the magistrate lacked jurisdiction over the felony charge.

... shall not include: (ii) summary offenses...." 42 Pa.C.
S.A. § 6302. As for district justices, 42 Pa.C.S.A. § 1515
provides that "[e]xcept as otherwise prescribed by general
rule adopted pursuant to § 503 (relating to reassignment of
matters), district justices shall, under procedure prescribed
by general rule, have jurisdiction of all of the following
matters: (i) Summary offenses...." Finally, the Motor
Vehicle Code provides that "[a]ny person over the age of 16
years charged with the violation of any provisions of this
title constituting a summary offense shall have all the
rights of an adult and may be prosecuted under the provi-
sions of this title in the same manner as an adult." 75
Pa.C.S.A. § 6303.

 The juvenile court, then, is without jurisdiction to
hear summary offenses.[10] The basis for this division in
jurisdiction lies in the divergent goals sought to be achieved
by the criminal and juvenile court systems. *Cf., In the
Interest of Leonardo*, 291 Pa.Super. 644, 436 A.2d 685
(1981) (plurality). While at least one of the purposes of the
criminal justice system is to punish individuals who fail to
obey the law, the purpose of juvenile proceedings, on the
other hand, is to "seek treatment, reformation and rehabili-
tation, and not to punish." *Id.* 436 A.2d at 687. Moreover,
while criminal courts employ the adversarial process to
secure a conviction of the defendant, there is no provision
for "convicting" an adjudicated juvenile of a "crime". *See,
In the Interest of Wilson*, 367 Pa.Super. 321, 532 A.2d 1167
(1987), *allocatur denied Petition of Commonwealth*, 520
Pa. 594, 552 A.2d 249 (1988), *app. den.* 520 Pa. 598, 552
A.2d 252 (1988). The juvenile court system simply "adjudi-
cates" the juvenile, eliminating many of the consequences

**10.** We note that there is authority holding that juvenile court has
jurisdiction to hear summary offenses where, at a *de novo* hearing
before the court of common pleas, the child seeks to have his case
transferred to juvenile court on the grounds that 75 Pa.C.S.A. § 6303
was not applicable to him because of his age and, based on this
section, the court had no jurisdiction over him. *Commonwealth v.
Kirk*, 293 Pa.Super. 487, 439 A.2d 680 (1981). While expressing no
opinion as to the propriety of this decision, we note that in the present
case, 75 Pa.C.S.A. § 6303 is clearly applicable and Appellant received
his rights as an adult under the statute.

which would normally result from a criminal conviction. The Act specifically addresses the effect of an adjudication of delinquency. "An order of disposition of other adjudication in a proceeding under this chapter is *not a conviction of crime* and does not impose any civil disability ordinarily resulting from a conviction or to operate to disqualify the child in any civil service application or appointment." 42 Pa.C.S.A. § 6354(a) (Emphasis added). By design, the two systems are separate and are clearly intended to serve different functions.

Recognizing a jurisdictional exception to the double jeopardy clause will allow each system to operate without detriment to the functioning of the other. Under the present architecture of the judicial system, since the jurisdiction of the district justice is not co-extensive with that of the juvenile court, and neither the district justice nor juvenile court can adjudicate both summary and more serious offenses arising out of the same incident[11], the Commonwealth would necessarily be forced to forego one of the prosecutions. Clearly, our legislature did not intend to place prosecutors in this type of dilemma when it sought to provide an alternative to the treatment of juvenile offenders as criminals.

Recognition of this exception does not run afoul of the rule announced in *Grady* because the *Grady* court specifically reaffirmed its recognition that application of its traditional double jeopardy analysis is not without exception. *Grady* at —, n. 7, 110 S.Ct. at 2090, n. 7, *quoting, Brown*

11. By virtue of 75 Pa.C.S.A. § 6303, a juvenile charged with a summary vehicle offense has all the rights of an adult. Thus, the juvenile cannot be required to submit to the informality of the juvenile hearing. Moreover, there is no indication that *all* charges could have been brought in *criminal* court. 42 Pa.C.S.A. § 6322 provides, "[e]xcept as provided in 75 Pa.C.S.A. § 6303 (relating to the rights and liabilities of minors), if it appears to a court in a criminal proceeding other than murder, that the defendant is a child, the court shall halt further criminal proceedings and, where appropriate, transfer the case to the division or a judge of the court assigned to conduct juvenile hearings...." Clearly then, exclusive jurisdiction over juveniles charged with offenses other than murder or summary vehicle offenses lies with the juvenile court. *See Commonwealth v. Zoller*, 345 Pa.Super. 350, 498 A.2d 436 (1985).

*v. Ohio, supra* 432 U.S. at 169 n. 7, 97 S.Ct. at 2227 n. 7. (Citations omitted.) Although the exception first acknowledged in *Brown* was premised on the absence of facts necessary to sustain the more serious charge, we believe that the unique circumstances presented by this case compel the equal recognition of an exception to the application of the traditional double jeopardy analysis based on the want of co-extensive jurisdiction by the two courts involved. Such an exception fully comports with the spirit of *Brown* and the protections which the double jeopardy clause was envisioned to afford the criminally accused and, yet, is sensitive to the fact that the Commonwealth was unable to go forward with both the delinquency petition and the trial on the Vehicle Code violations in a single proceeding.

Additionally, this decision is in full accord with our recent decision in *Commonwealth v. LaBelle, supra,* interpreting *Grady v. Corbin, supra.* Neither *LaBelle* nor *Grady* addressed the applicability of a jurisdictional exception, nor would such an exception be necessary since both of those cases involved situations where the lesser and greater offenses could have been joined, thereby enabling a single prosecution.

Having adopted this jurisdictional exception, we hold that the double jeopardy clause does not bar the Commonwealth from proceeding with the delinquency petition, despite the fact that the Appellant was found guilty of vehicle code offenses in a prior proceeding held before a district justice.

The order is affirmed and the case is remanded for further proceedings. Jurisdiction is relinquished.

MONTEMURO, J., files a concurring statement.

BECK, J., files a dissenting opinion, WIEAND, J., joins.

MONTEMURO, Judge, concurring statement:

While I agree with the Majority's ultimate resolution of appellant's claim, I write separately to express my belief

that because of the singular focus of this case on the interaction between juvenile and criminal courts in relation to double jeopardy, those prior cases which involve only the criminal system, viz., *Commonwealth v. LaBelle*, 397 Pa. Super. 179, 579 A.2d 1315 (1990) (en banc); *Commonwealth v. Evers*, 381 Pa.Super. 568, 554 A.2d 531 (1989), are in fact jurisdictionally and factually irrelevant. As the Act makes clear, delinquency specifically excludes summary offenses. 42 Pa.C.S.A. § 6302. Therefore, unlike the situation obtaining in the cited cases, joinder was understood to be an impossibility.

BECK, Judge, dissenting:

On June 2, 1987, 17 year old appellant Jelbert Huff, Jr., stood trial and was convicted of reckless driving and driving at an unsafe speed. Today this court concludes that, because of perceived statutory limitations on the courts in which he was and will be tried, appellant can be tried once again for the same offense. In my view, the majority's holding is an unwarranted violation of appellant's fundamental guarantee against double jeopardy. I respectfully dissent.

The constitutional guarantee respecting double jeopardy embodies three protections: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). In the instant case we are particularly concerned with the second of these protected interests. With respect to that protection, the Supreme Court has emphasized:

The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with

all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187–188, 78 S.Ct. 221, 223-24, 2 L.Ed.2d 199 (1957).

Last term, in *Grady v. Corbin*, —— U.S. ——, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548, 564 (1990), the Supreme Court explained that, "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of the offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." In *Grady v. Corbin*, in a fact pattern similar to the instant case, the defendant pled guilty to traffic charges of driving while intoxicated and failing to keep right of the median. The charges arose from a fatal automobile accident. Two months after the guilty pleas had been entered, the defendant Corbin was indicted on charges of vehicular manslaughter, reckless assault and negligent homicide. The New York Court of Appeals held that double jeopardy barred the second prosecution because the State intended to rely on the prior traffic offenses to prove the homicide and assault charges. The United States Supreme Court affirmed, stressing that the successive prosecution was barred by double jeopardy because the conduct the state would prove in the second trial was concededly and indisputably conduct for which Corbin had already been prosecuted. As such it constituted the "same offense" for purposes of double jeopardy analysis.

The majority correctly recognizes that *Grady v. Corbin* would govern the result in this case and, once applied, would bar reprosecution had appellant been an adult at the time the offenses were committed. *See also Commonwealth v. LaBelle*, 397 Pa.Super. 179, 579 A.2d 1315 (1990)

(en banc). However, the majority avoids the impact of *Grady v. Corbin* and denies to this defendant the full extent of double jeopardy protection by carving out a wholly unwarranted "jurisdictional exception" to the operation of the double jeopardy guarantee.

The majority arrives at this conclusion by what is, in my view, a strained and unnecessarily technical reading of various statutory provisions governing the adjudication of summary offenses and of delinquency petitions in juvenile court. However, even if I agreed with the majority's conclusion that "no single court had jurisdiction over both the summary offenses and the delinquency proceeding", I nevertheless would find this prosecution barred. Double jeopardy protection against multiple trials for the same offense cannot be eroded by the statutory device of creating courts of limited jurisdiction within a single sovereignty.

As the majority acknowledges, the "jurisdictional exception," upon which it bases its denial of double jeopardy protection to this defendant, has never been expressly articulated or adopted by the Supreme Court outside the context of "dual sovereignty."[1] Simply stated, the "jurisdictional exception" which had, in some instances, constituted an exception to the general application of double jeopardy principles is that if a defendant has been convicted of a lesser offense in an inferior court which had no jurisdiction

---

1. Unlike the "jurisdictional exception" upon which the majority relies, the doctrine of dual sovereignty persists as an exception to the prohibition against double jeopardy. If the two entities which seek successively to prosecute a defendant are separate sovereigns, double jeopardy will not bar reprosecution. The underlying principle upon which dual sovereignty rests is that separate sovereigns have the right to enforce their own laws. A violation of law is an offense against the "peace and dignity" of the individual sovereign and each sovereign retains the right to vindicate the breach of its authority. *See United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922). The heart of the concept of dual sovereignty lies in the source of the power and authority in whose name the prosecution is undertaken. *See Heath v. Alabama,* 474 U.S. 82, 89–90, 106 S.Ct. 433, 437–38, 88 L.Ed.2d 387 (1986). Thus, the doctrine applies to federal and state prosecutions, successive individual state prosecutions, and federal and tribal prosecutions. It clearly has no applicability for successive prosecutions within a single sovereign. *See Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970).

over the greater offense, that defendant may be tried for the greater offense and double jeopardy will not bar the subsequent prosecution. Whatever brief life the "jurisdictional exception" enjoyed in Pennsylvania in the guise of *Commonwealth v. Evers*, 381 Pa.Super. 568, 554 A.2d 531 (1989), has now fully been put to rest in this court's en banc decision in *Commonwealth v. LaBelle, supra*. The majority acknowledges this in the first section of its opinion.

The "jurisdictional exception" has fared no better elsewhere. In fact, the case upon which the majority relies for its bald assertion of a "jurisdictional exception", i.e. *Diaz v. United States*, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912), can no longer be thought to have much, if any, vitality in the face of double jeopardy jurisprudence that has developed since *Diaz* was decided. *See Waller v. Florida*, 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970) (a municipal court and a state court cannot place defendant on trial twice for the same criminal conduct despite argument that they constitute distinct sovereignties); *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Grady v. Corbin, supra*. The rejection of the "jurisdictional exception" by many states and federal courts [2] in recent years in the wake of *Waller*, etc., is based on the sound, indeed compelling, rationale that the double jeopardy guarantee is not so fragile as to be dependent upon the jurisdictional limitations states may choose to impose within a multifaceted judicial system.[3]

**2.** *See, e.g., Culberson v. Wainwright*, 453 F.2d 1219, 1220 (5th Cir. 1972); *Salaz v. Tansy*, 730 F.Supp. 369, 371 (D.N.M.1989) (and cases cited therein); *Robinson v. Neil*, 366 F.Supp. 924 (E.D.Tenn.1973); *Commonwealth v. Norman*, 27 Mass.App. 82, 534 N.E.2d 816, 820, *affirmed*, 406 Mass. 1001, 545 N.E.2d 1155 (1989); *May v. State*, 726 S.W.2d 573, 577 n. 7 (Tex.Cr.App.1987).

**3.** As the majority notes, New Mexico apparently clings to the "jurisdictional exception" to double jeopardy protection, seemingly alone in its resolve to do so. *See State v. Fugate*, 101 N.M. 58, 678 P.2d 686 (1984), *aff'd sub nom.*, 470 U.S. 904, 105 S.Ct. 1858, 84 L.Ed.2d 777 (1985) (affirmed by an equally divided Supreme Court). I do not read this affirmance by an equally divided court as a definitive or precedential adoption of the "jurisdictional exception". In any event, the

I find persuasive the court's reasoning in *Commonwealth v. Norman*, 27 Mass.App. 82, 534 N.E.2d 816, 820, *aff'd*, 406 Mass. 1001, 545 N.E.2d 1155 (1989):

> If ... the constitutional law of the land forb[ids] successive prosecutions for the same criminal act, that doctrine ought not to be subverted because courts of limited jurisdiction ha[ve] been established within the same sovereign. For the defendant obliged to run the gauntlet more than once, the ordeal would not be less painful because the several courts he was haled before had discrete jurisdiction.

The majority attempts to revive the deteriorated so-called "jurisdictional exception" in the instant case by drawing two distinctions, neither of which persuades me to deprive appellant of his double jeopardy protection. First, the majority emphasizes that, due to its interpretation of the jurisdictional limits of district justice court and juvenile court, the charges in the instant case could not have come before a single tribunal. Therefore, in order that the prosecution not be forced to forego either the summary offense prosecution or the delinquency adjudication, the appellant's double jeopardy rights may be sacrificed through the imposition of successive trials for the same offense. Putting aside for a moment the majority's too narrow statutory interpretation on the jurisdictional limits involved here, my response to this position is simple. The courts of this Commonwealth are part of a unified, state judicial system,

former Mr. Justice Brennan noted in his majority opinion in *Grady v. Corbin, supra*, —— U.S. at —— n. 2, 110 S.Ct. at 2087 n. 2, 109 L.Ed.2d at 557 n. 2, that the double jeopardy issue facing the Court in *Corbin* had been raised before in *Fugate* but had been left unresolved. In *Corbin* the Supreme Court resolved the issue that remained open after *Fugate.* It found that the double jeopardy clause barred a subsequent prosecution for a greater offense in a court of general jurisdiction if, in order to establish an essential element of that offense, the prosecution would prove conduct for which the defendant had already been tried in traffic court. Both *Corbin* and *Fugate* (as well as the case at bar) involved attempted successive prosecutions for charges arising from a fatal automobile accident in which the defendant previously had been tried in traffic court on the traffic offense. *Corbin* disallowed the type of prosecution at issue in *Fugate,* and, consequently, impliedly rejected New Mexico's jurisdictional exception.

the jurisdictional limits of which are set by a single sovereign through legislative action. *Commonwealth v. Downs*, 334 Pa.Super. 568, 483 A.2d 884, 887 (1984). Both the district justice court and the juvenile court derive their power and authority from the same source. The Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 10 of the Pennsylvania Constitution guarantee to our citizens, adults and juveniles alike, that they will be free from successive prosecutions for the same offense. Our legislature cannot escape this constitutional mandate by creating courts with mutually exclusive jurisdiction over greater and lesser criminal offenses. The integrity of the jurisdictional scheme created by the legislature surely cannot take precedence over the fundamental constitutional rights embodied in the double jeopardy clause. I agree with the court in *Salaz v. Tansy*, 730 F.Supp. at 373, which stated: "When the state controls prosecutions in its multilevel judicial system, the double jeopardy clause is a defendant's only protection." Defendants cannot be stripped of this protection by manipulating the jurisdiction of the courts through which they must suffer their multiple trials.

Further, I cannot agree with the majority that its denial of double jeopardy protection to this appellant is justified because of "the divergent goals sought to be achieved by the criminal and juvenile systems". Nor can I conclude that because the juvenile court system *"simply 'adjudicates'* the juvenile" that therefore he is entitled to only a diluted form of double jeopardy protection. These assertions by the majority fly in the face of the realities of the juvenile court process, and more importantly, contravene the long-standing constitutional guarantees fashioned by the Supreme Court.

The arguments posited by the majority are precisely those rejected by the Supreme Court when it first applied double jeopardy protection to juvenile delinquency proceedings. *Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975). There, too, the state argued that since

the purposes of the juvenile justice system were benign and not intended to be punitive, the policies underlying the double jeopardy protection were not implicated. The Court emphatically rejected this suggested approach. Pointing to recent decisions in which the Court had extended various constitutional guarantees to juveniles,[4] the Supreme Court noted that they were motivated by the recognition that, "there is a gap between the originally benign conception of the [juvenile justice] system and its realities". *Breed v. Jones*, 421 U.S. at 528, 95 S.Ct. at 1785. Moreover, the Court emphasized that the double jeopardy guarantee was not meant only to protect against multiple criminal *punishments*. It was and is intended to spare citizens the ordeal of multiple trials. With respect to the "trials" involved in that case, the Court said: "[T]here is little to distinguish an adjudicatory hearing such as was held in this case from a traditional criminal prosecution. For that reason, it engenders elements of 'anxiety and insecurity' in a juvenile, and imposes a 'heavy personal strain'." 421 U.S. at 530, 95 S.Ct. at 1786. The *Breed* Court concluded that, *twice* being subjected to that burden, *twice* being put to the task of defending against the same charges brought by the state and *twice* experiencing the "heavy personal strain" of being tried for the same offense, is exactly the plight the double jeopardy guarantee assures against. 421 U.S. at 533, 95 S.Ct. at 1787. Finally, the Supreme Court rejected the argument which the majority here apparently embraces, i.e. that extending the double jeopardy guarantee to juvenile proceedings would somehow diminish the flexibility and informality of the juvenile justice system. It concluded instead that: "[T]he burdens that [the state] envisions appear to us neither qualitatively nor quantitatively sufficient to justify a departure in this context from the fundamental prohibition against double jeopardy." 421 U.S. at 537, 95 S.Ct. at 1789. Therefore, on the basis of *Breed*, a denial of double jeopardy protection to this juvenile cannot be sup-

4. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

ported by the distinction between a juvenile delinquency proceeding and an adult criminal trial.

Finally, to the extent that the majority's conclusion today is dictated by its reading of the statutory jurisdictional scheme at work here, I suggest that it is erroneous. As the majority points out, various jurisdictional provisions operate to define in which courts and under what procedural circumstances summary offenses and delinquency petitions may be adjudicated. In particular, the majority notes that 42 Pa.Cons.Stat.Ann. § 1515 (Purdon 1981) gives district justices jurisdiction over summary offenses. Moreover, the Motor Vehicle Code provides that juveniles between the ages of 16 and 18 who are charged with summary motor vehicle offenses have the rights of an adult and "may be prosecuted under the provisions of this title in the same manner as an adult." 75 Pa.Cons.Stat.Ann. § 6303 (Purdon 1977). In addition, juvenile court jurisdiction, which is defined in the Juvenile Act, extends to "proceedings in which a child is alleged to be delinquent or dependent" and to "transfers under section 6322 (relating to transfer from criminal proceedings)". 42 Pa.Cons.Stat.Ann. § 6303(a)(1) and (2) (Purdon 1982). The final statutory provision which applies to today's inquiry is the definitional portion of the Juvenile Act which states that a "delinquent act" does not include "summary offenses." 42 Pa.Cons.Stat.Ann. § 6302 (Purdon 1982). With very little case law to guide it, the majority concludes that, based on its reading of these statutes together, "neither the district justice nor juvenile court can adjudicate both summary and more serious offenses arising out of the same incident." I disagree.

I would hold that the above-described statutory scheme does not preclude bringing within a single proceeding before the juvenile court, both the delinquency petition alleging a delinquent act and the summary offenses. I arrive at this conclusion by a straightforward reading of the statutory language. In addition, unless the statutes are so interpreted senseless anomalies arise from the case law

which discusses original and transfer jurisdiction of juvenile court over summary offenses.

While the Juvenile Act precludes the use of summary offenses as the *basis* for an adjudication of delinquency, nothing in the act deprives the juvenile court of jurisdiction to adjudicate summary charges which are filed as part of a *proceeding* in which a child is alleged to be delinquent. The Act specifically gives juvenile court jurisdiction over such *proceedings*. In the instant case, for example, the delinquency petition charged appellant with aggravated assault and homicide by vehicle. Only these charges could form the basis of a finding of delinquency and its attendant consequences. Yet during the same proceeding, the juvenile court is not without power to hear the summary charges. Nothing inherent in the nature of the juvenile court deprives it of the power to adjudicate summary charges.

This is plain because the juvenile court has been held to have jurisdiction over a summary offense *alone* (without the filing of a delinquency petition) if the summary offense is transferred to juvenile court under section 6322 after an appeal de novo has been taken to the court of common pleas from a summary conviction. Thus, in *Commonwealth v. Alan D.*, 291 Pa.Super. 298, 435 A.2d 1231 (1981), a 12 year old juvenile appealed from a summary conviction of criminal mischief. His de novo appeal was taken to the Court of Common Pleas of Berks County. The trial judge transferred the case under section 6322 to the juvenile court. The juvenile court then found the defendant guilty beyond a reasonable doubt of the summary charges and imposed a fine and ordered restitution. On the other hand, the juvenile court found that since the defendant had not committed a delinquent act within the meaning of the statute, he could not be adjudged a delinquent child. This court affirmed the actions of the courts below. *Accord, Commonwealth v. Kirk J.*, 293 Pa.Super. 487, 439 A.2d 680 (1981). Given *Alan D.* and *Kirk J.*, I fail to see how the majority can

conclude that "juvenile court, then, is without jurisdiction to hear summary offenses." Clearly, this is not the case.

I decline to interpret the applicable statutes to arrive at the anomalous result the majority achieves here, whereby juvenile court could adjudicate summary charges when jurisdiction is obtained through the transfer provisions of section 6322 but is without power to adjudicate the same charges when they accompany a petition for delinquency in a proceeding under section 6303(a)(1). No rational purpose would be served by such a result and the majority offers no explanation for the illogical anomaly.[5]

The majority attempts to escape the force of this argument by suggesting that the result it reaches is necessitated by the operation of section 6303 of the Motor Vehicle Code. That section provides that juveniles between 16 and 18 years of age who are charged with summary vehicle offenses "have all the rights of an adult and may be prosecuted under the provisions of this title in the same manner as an adult." 75 Pa.Cons.Stat.Ann. § 6303 (Purdon 1977). The majority then cites the language of the Juvenile Act regarding transfer of criminal proceedings to juvenile court when it appears that the defendant is a child. 42 Pa.Cons.Stat.Ann. § 6322 (Purdon Supp.1990). In pertinent part, section 6322 provides:

> Except as provided in 75 Pa.C.S. § 6303 (relating to the rights and liabilities of minors), or in the event the child is

---

5. My research has revealed one decision which has addressed the adjudication by juvenile court of summary charges which were filed in a delinquency proceeding in which a child was alleged also to have committed a delinquent act. *In re Leonardo*, 291 Pa.Super. 644, 436 A.2d 685 (1981). In that case a lone member of the panel concluded that summary charges could not be adjudicated in this fashion by a juvenile court sitting for a delinquency proceeding. The two additional panel members concurred only in the result. I find *Leonardo* unpersuasive. First, its holding reflects the reasoning of only one judge. Second, although *Leonardo* was filed just a few weeks after *Alan D.*, it makes no reference to it nor does it attempt to distinguish it. In my view, both *Alan D.* and *Kirk J.*, are inconsistent with the rationale underlying the one panel member's opinion in *Leonardo*. *Leonardo* has never been relied upon for the conclusion that juvenile court is without power to adjudicate summary charges when they are charged along with a delinquency proceeding alleging delinquent acts. Until today, this court has never so held.

charged with murder or has been found guilty in a criminal proceeding, if it appears to the court in a criminal proceeding, that the defendant is a child, this chapter shall immediately become applicable, and the court shall forthwith halt further criminal proceedings, and where appropriate, transfer the case to the division or a judge of the court assigned to conduct juvenile hearings....

The majority reads the foregoing section as excluding summary offenses from the jurisdiction of the juvenile court. I read it as permitting courts involved in criminal proceedings to retain jurisdiction over summary motor vehicle offenses where the offender is between 16 and 18 years old. As such, section 6303 of the motor vehicle code operates as an exception to the general mandate of section 6322 of the Juvenile Act which seeks to have criminal proceedings against children adjudicated in juvenile court. However, I do not agree that section 6322 either precludes transfer of such cases to juvenile court or, more importantly, denies juvenile court jurisdiction over such offenses if they are filed as part of a delinquency proceeding. The motor vehicle code, using clearly permissive language, provides that juveniles between 16 and 18 *may* be prosecuted as adults for summary offenses. It does not provide that they shall be prosecuted as such. The motor vehicle provision does not, in my view, strip juvenile court of authority to act if such charges are filed at a delinquency proceeding or are transferred from a criminal proceeding pursuant to section 6322.

It is clear that the legislative policy underlying Section 6303 of the Motor Vehicle Code was to treat juveniles between the ages of 16 and 18 as adults in ordinary cases of summary offenses. The special qualities of the juvenile system were not required for adjudication of summary offenses. However, I can not believe that the legislature intended to deprive the juvenile court of jurisdiction in summary offenses where the juvenile court had jurisdiction generally over the matter. As a matter of policy there is nothing about summary offenses which make the juvenile

court an inappropriate forum. Nor is there anything about the functioning of the court system as a whole that makes the juvenile court an inappropriate forum.

Permitting the joint adjudication of both the summary motor vehicle charges and the allegations of delinquency in a single proceeding before the juvenile court would have avoided the double jeopardy question at issue here and would not contravene jurisdictional limits imposed by statute. Moreover, I see no inherent policy considerations which would argue against such a proceeding. However, I wish to re-iterate that *even if* the legislature had intended to create the mutually exclusive jurisdiction that the majority finds here and *even if* the Commonwealth would therefore have to forego one or the other prosecution, my response would be the same. Appellant cannot, consistent with the constitutional prohibition against double jeopardy, be forced to submit to successive prosecutions for the same offense. No amount of jurisdictional juggling can deprive him of this fundamental guarantee.

WIEAND, J., joins in this dissenting opinion.